EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re
**JESSICA P SAM and**
**HA TO HA**


Debtor(s)

)  Case No.  **13-32107-elp7**
)
)
)  NOTICE OF MOTION FOR RELIEF
)  FROM (Check all that apply):
)  ☒ AUTOMATIC STAY IN A **CHAPTER 7/13** CASE
)  ☐ CHAPTER **13** CODEBTOR STAY

I.     YOU ARE NOTIFIED that a Motion was filed by  **DEUTSCHE BANK NATIONAL TRUST COMPANY In Its \*** , the moving party, for (Check all that apply):

☒ Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 USC §362.

☐ Relief from the stay protecting the codebtor, whose name and service address are: _____
**\*capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a \*\*** ,
and codebtor's property as provided by 11 USC §1301.

II.    A copy of the Motion is attached.  The name and service address of the moving party's attorney (or moving party, if no attorney) are: **Lisa McMahon-Myhran, 710 Second Ave., Suite 710, Seattle, WA  98104** _____
**\*\*Delaware statutory trust. 2006-1 and its successors and assigns**

III.   If you wish to resist the Motion, you must, within 14 days of the service date shown below, file the following with the Clerk of the U.S. Bankruptcy Court [NOTE:  If you mail the Response to the Court for filing, you must mail it at least 3 days before the filing deadline, unless you use an overnight delivery service, so that it will actually be received at the Court on time]:

   A.  A written response that states the facts supporting the opposition to the Motion by filling in the applicable "Response" portions on a copy of the original Motion. [NOTE:  If the Response will be electronically filed, the Response must be prepared using the "fillable" pdf version of the original Motion unless the Motion was filed on paper and could not be electronically obtained from the movant];

And  B.  A fully completed Notice of Hearing using Local Form #721, including the date and time of the hearing.  Available hearing dates and times are posted on the Court's website at www.orb.uscourts.gov under the "Hearings" heading.  If you do not have internet access, please call the Court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information from a Court clerk.

IV.    Failure to Respond and Serve Proper Notice of Hearing.  If you fail to file a timely response and a proper Notice of Hearing, then either:

   A.  The automatic stay will expire as to the debtor(s) pursuant to 11 USC §362(e) 30 days after the Motion was originally filed, and/or the stay protecting the codebtor will automatically expire pursuant to 11 USC §1301(d) 20 days after the date the Motion was originally filed;

Or   B.  The Court may sign an ex parte order, submitted by the moving party on Local Form #720.90, granting relief from the debtor stay and/or codebtor stay.

                              Clerk, U.S. Bankruptcy Court
                              [NOTE:  If the 5-digit portion of the Case No. begins with "3" or "4", mail
                              to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it begins with "6" or
                              "7", mail to 405 E 8th Ave #2600, Eugene OR 97401.]

I certify that:  (1) The Motion was prepared using the Court's "fillable" PDF version of Local Form #720.80; and (2) that on ___04/23/13___ I served copies of this Notice and the Motion on the Debtor(s), any codebtor at the address listed above, Trustee, U.S. Trustee, members of any committee elected pursuant to 11 USC §705, and their respective attorneys.

                              /s/ Lisa McMahon-Myhran                    000849
                              Signature of Moving Party or Attorney            (OSB#)

720 (12/1/11)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | |
|---|---|
| In re | ) Case No. __13-32107-elp7__ |
| **JESSICA P SAM and** | ) |
| **HA TO HA** | ) (CHECK ALL APPLICABLE BOXES) |
| | ) ☒ Ch. 7/13 Motion for Relief from |
| | ) ☒ DEBTOR ☐ Chapter **13** CODEBTOR Stay |
| | ) Filed by Creditor: |
| | ) **DEUTSCHE BANK NATIONAL TRUST \*** |
| | ) ☐ *Response to Stay Motion filed by Respondent:* |
| Debtor(s) | ) _____ |

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** *(To be completed by creditor)*

   a. Description of collateral (car model, year, VIN, property address):

   **8230 SE Yamhill Street, Portland, OR 97216**

   **\*COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust. 2006-1 and its successors and assigns**
   b. Amount of debt: $___258,220.49___ consisting of principal: $___195,058.93___; interest: $___37,286.16___; other:
   **Late Charges $2,570.18; Escrow Shortage $6,396.03; Other Fees $16,909.19**

   **This amount does not contain attorney's fees and costs.**
   c. Description, amount and priority of other encumbrances on collateral. If not known, include applicable information from debtor's schedules if available on PACER:



   Total debt secured by collateral (total 1.b. + 1.c.): $___258,220.49___.

   d. Value of collateral: $___155,000.00___.
   Equity in collateral: $___-115,620.49___, after deducting $___12,400.00___ liquidation costs.

   e. Current monthly payment: $___1,887.24___.

   f. If Chapter 13:

   (1) $_____ postpetition default consisting of (e.g., $____ payments, $____ late charges, $____ fees):


   (2) $_____ prepetition default consisting of ☐ amounts specified in proof of claim, or, ☐ consisting of:



   g. If Chapter 7, total amount of default $___51,180.45___.

*RESPONSE (Identify specific items disputed and specify what you contend are the pertinent facts including why there is a postpetition default, if applicable) (to be completed by respondent):*

2. **Relief from stay should be granted because (check all that apply):** *(To be completed by creditor)*
   - [X] Lack of adequate protection because of failure to make sufficient adequate protection payments and lack of a sufficient equity cushion.
   - [ ] Lack of insurance on collateral.
   - [X] No equity in the collateral and the property is not necessary for an effective reorganization.
   - [ ] Failure of debtor to make Chapter 13 plan payments.
   - [ ] Failure of debtor to make payments to secured creditor required by ¶4 of Chapter 13 plan.
   - [ ] Other (describe):

**RESPONSE** *(Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using Local Form (LBF) #720.90 available at www.orb.uscourts.gov under Rules & Forms/Local Bankruptcy Forms (LBF)) (to be completed by respondent):*

3. **Background** *(To be completed by creditor)*

   a. Date petition filed: __04/08/13__  Current Chapter: __7__ (7 or 13)
      If 13, current plan date _____  Confirmed: [ ]Yes [ ]No
      If 13, treatment of creditor's prepetition claim(s) in plan:

      If 7, debtor[ ]has [X]has not stated on Local Form (LBF) #521 or #521.05 that debtor intends to surrender the collateral.

   b. Creditor has a lien on the collateral by virtue of (check all applicable sections and also see ¶6 below):
      - [X] Security agreement, trust deed or land sale contract dated __04/18/05__, and, if applicable, an assignment of said interest to creditor. The security interest was perfected as required by applicable law on __04/27/05__.
      - [ ] Retail installment contract dated _____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected on the certificate of title on _____.
      - [ ] Other (describe):

**RESPONSE** *(Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

4. **Request for Relief from Codebtor Stay** (Only Chapter **13**)

   a. _____, whose address is _____
      _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

   b. Creditor should be granted relief from the codebtor stay because (check all applicable boxes): [ ]codebtor received the consideration for the claim held by creditor, [ ]debtor's plan does not propose to pay creditor's claim in full, [ ]creditor's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above and/or [ ]because:

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

5.   **Other Pertinent Information** *(To be completed by creditor, if applicable):*
**Debtor has filed two other bankruptcy cases in the last year in an effort to delay or defraud Creditor. Please see case number 12-38965-rld13 and 12-30053-tmb13.**

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

6.   **Relief Requested (check all applicable sections):** *(To be completed by creditor)*

☒ Creditor requests relief from the automatic stay to allow it to foreclose its lien on the above identified collateral, and, if necessary, to take appropriate action to obtain possession of the collateral.

☒ Creditor has a security interest in real property and requests relief from stay with respect to an act against such property and that the relief be binding in any other bankruptcy case purporting to affect such real property filed not later than 2 years after the date of the entry of an order granting this motion. *(If you check this box, you must complete ¶5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.)*

☐ Creditor requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the following cause:

☐ Other (describe and explain cause):

*RESPONSE (Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using Local Form (LBF) #720.90 available at www.orb.uscourts.gov under Rules & Forms/Local Bankruptcy Forms (LBF)) (to be completed by respondent):*

7. **Documents:**

**If creditor claims to be secured in ¶3.b. above** creditor has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

**RESPONDENT requests creditor provide** Respondent with the following document(s), if any marked, which are pertinent to this response:

☐ Postpetition payment history.
☐ Documents establishing that creditor owns the debt described in ¶1 or is otherwise a proper party to bring this motion.
☐ Other document(s) (specific description):

CREDITOR/ATTORNEY

Signature: /s/ Lisa McMahon-Myhran
Name:  Lisa McMahon-Myhran
Address: 710 Second Ave., Suite 710
          Seattle, WA  98104
Email Address:  lmcmahon@robinsontait.com
Phone No: 206-654-5529
OSB#:    000849

RESPONDENT **DEBTOR**/ATTORNEY *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:
Name:
Address:

Email Address:
Phone No:
OSB#:

RESPONDENT **CODEBTOR**/ATTORNEY *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:
Name:
Address:

Email Address:
Phone No:
OSB#:

*YOU ARE HEREBY NOTIFIED THAT THE CREDITOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

# ADJUSTABLE RATE NOTE

**(LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

April 18, 2005                                    IRVINE  ,        California
     [Date]                                      [City]                [State]

8230 SE Yamhill Street, Portland, OR  97216
                    [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 202,400.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Aames Funding Corporation DBA Aames Home Loan

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.990 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the  1st  day of each month beginning on June 1st 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on May 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  Aames Funding Corporation DBA Aames Home Loan, 350 South Grand Avenue, 47th Floor, Los Angeles, CA  90071 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,627.10 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  1st  day of  May , 2007 , and on that day every 6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**OREGON ADJUSTABLE RATE NOTE - LIBOR 6 MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) -**
Single Family

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Six and 350 Thousandths percentage point(s) (    6.350%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than        11.990 % or less than       8.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than     One percentage point(s) (     1.000 %) from the rate of interest I have been paying for the preceding    Six months. My interest rate will never be greater than              14.990 % or less than      8.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

Except as provided below, I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

However, if within the first      2    years after the execution of the Deed of Trust, I make any prepayments(s) of principal, whether voluntarily, involuntarily, or upon acceleration of the Note within any 12-month period the total amount of which exceeds twenty percent (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advanced interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

## 6. LOAN CHARGES

This Note shall be governed by the laws of the State of Oregon. If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
Ha  To  Ha                      -Borrower                                                   -Borrower

_____ (Seal)                    _____ (Seal)
                                -Borrower                                                   -Borrower

*[Sign Original Only]*

## Endorsement and Assignment of Note

Re: Loan No. _____                                    Date  04/22/05 _____

Borrower's Name:  Ha To Ha _____

Property Address:  8230 SE Yamhill Street _____

Portland, OR  97216 _____

Note Date:  ᴀᴘʀɪʟ 18, 05 _____

Loan Amount:  $202,400.00 _____

Los Angeles, California

For value received, I hereby transfer, endorse and assign to _____ the within Note and
Deed of Trust securing the same, so far as the same pertains to said Note, without recourse.

Aames Funding Corporation, DBA Aames Home Loan

X _____          X _____
,Assistant Secretary                                                      ,Assistant Secretary

**Thuytien Phung**

AC702803.DOC (08/98)

Until a change is requested all tax statements shall be
sent to the following address.

Recorded in MULTNOMAH COUNTY, OREGON
C. Swick,  Deputy Clerk       ATTDS

Aames Funding Corporation DBA
Aames Home Loan
350 South Grand Avenue
Los Angeles, CA 90071

C18   19
Total :      111.00

2005-074270     04/27/2005 02:37:12pm

**WHEN RECORDED MAIL TO**

TransUnion Settlement Solutions, Inc.
Attn: Recording Department
5300 Brandywine Parkway
Suite 100
Wilmington, DE  19803

**TAX ACCOUNT NUMBER**
R281439

───────[Space Above This Line For Recording Data]───────

# DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**(A) "Security Instrument"** means this document, which is dated   April 18, 2005
together with all Riders to this document.
**(B) "Borrower"** is   HA TO HA

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  Aames Funding Corporation DBA Aames Home Loan

Lender is a   Corporation
organized and existing under the laws of  The State of California

OREGON-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3038  1/01

-6(OR) (0104)
Page 1 of 15     UM50 0104.02     Initials:
VMP MORTGAGE FORMS - (800)521-7291

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 1 of 19
Order            Comment:

Lender's address is  350 South Grand Avenue, 42nd Floor, Los Angeles, CA 90071
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  Lindsay Harte Law Office

(E) "Note" means the promissory note signed by Borrower and dated   April 18, 2005
The Note states that Borrower owes Lender   Two Hundred Two Thousand Four Hundred and No/100                                                             Dollars
(U.S. $ 202,400.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  May 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

DOC         #2

VMP®-6(OR) (0104)                          Page 2 of 15                    Initials: _____      Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 2 of 19
Order: 100361229 Comment:

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of MULTNOMAH                    :

      [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

As per Exhibit A attached hereto and made a part hereof

                                          which currently has the address of
                                                               [Street]

8230 SE Yamhill Street
Portland                    [City], Oregon 97216          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

                 Initials: ____

VMP®-6(OR) (0104)                    Page 3 of 15                    Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 3 of 19
Order: 100361229 Comment:

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower

shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 5 of 19
Order: 100361229 Comment:

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to

-6(OR) (0104)    Initials: _____    Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 6 of 19
Order: 100361229 Comment:

Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 7 of 19
Order: 100361229 Comment:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6(OR) (0104)                         Page 8 of 15          Initials: _____          Form 3038  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6(OR) (0104)                               Page 9 of 15                Initials: _____        Form 3038  1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 10 of 19
Order: 100361229 Comment:

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 11 of 19
Order: 100361229 Comment:

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

-6(OR) (0104)                    Page 12 of 15                    Form 3038  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. **Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. **Required Evidence of Property Insurance.**

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

Initials: _____

VMP®-6(OR) (0104)                Page 13 of 15                Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 13 of 19
Order: 100361229 Comment:

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                     Ha To Ha                  -Borrower

_____                    _____ (Seal)
                                                                              -Borrower

_____ (Seal)             _____ (Seal)
                      -Borrower                                                -Borrower

_____ (Seal)             _____ (Seal)
                      -Borrower                                                -Borrower

_____ (Seal)             _____ (Seal)
                      -Borrower                                                -Borrower

-6(OR) (0104)                        Page 14 of 15                      Form 3038   1/01

STATE OF OREGON, *Multnomah* County ss:
On this *21st* day of *April 2005* , personally appeared the above named

Ha  To  Ha

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: 1/5/08

(Official Seal)

Before me: *L. Harkless*

Notary Public for Oregon

OFFICIAL SEAL
L. HARKLESS
NOTARY PUBLIC-OREGON
COMMISSION NO. 375355
MY COMMISSION EXPIRES JANUARY 5, 2008

Initials:

VMP-6(OR) (0104)                    Page 15 of 15                    Form 3038  1/01

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this    18th      day of    April      ,
2005      , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to    Aames Funding
Corporation DBA Aames Home Loan

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

8230 SE Yamhill Street, Portland, OR  97216
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY
ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of                      8.990 %. The Note provides for
changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the    1st    day of May      , 2007      ,
and on that day every    6th      month thereafter. Each date on which my interest rate could change
is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first
MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX (AS PUBLISHED IN THE WALL STREET
JOURNAL) -Single Family

-AS838U (9705)    DOC                    PPI

Page 1 of 3          Initials:

ELECTRONIC LASER FORMS, INC. - (800)327-0649

business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 350 Thousandths                                                                          percentage point(s) (          6.350 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.990 % or less than                          8.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   One                                                                          percentage point(s) (          1.000 %) from the rate of interest I have been paying for the preceding   6       months. My interest rate will never be greater than              14.990 % or less than              8.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER** Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender

*Elf* -AS838U (9705)                                    Page 2 of 3                                    Initials: _____

information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower
Ha To Ha

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

-AS838U (9705)                          Page 3 of 3

## EXHIBIT "ONE"

The East 10.52 feet of Lot 5, and all of Lots 6,7 and 8, Block 5, SUNRISE PARK, in the City of Portland, County of Multnomah and State of Oregon.

53

When recorded, mail to:

**Multnomah County Official Records**
**C Swick, Deputy Clerk**                                      **2010-077497**

$41.00

U0685160201000774970020025

**RESIDENTIAL CREDIT SOLUTIONS**                            06/23/2010 01:27:43 PM
Attn: Foreclosure Department
4282 N FREEWAY                              1R-MTG ASGT              Cnt=1 Stn=43 ATRGW
FORT WORTH, TEXAS 76137                     $10.00 $11.00 $15.00 $5.00

Trustee's Sale No: 09-FAA-96724

## *FAA967240112000000*

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, AAMES FUNDING CORPORATION DBA AAMES HOME
LOAN, by these presents, grants, bargains, sells, assigns, transfers and sets over unto DEUTSCHE
BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES
MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust., 4282 N Freeway, Fort Worth,
TX 76137, all beneficial interest under that certain Deed of Trust dated 4/18/2005, and executed by HA
TO HA, as Grantor, to LINDSAY HARTE LAW OFFICE, as Trustee, and recorded on 4/27/2005, under
Auditor's File No. 2005-074270, of MULTNOMAH County, State of OREGON, and covering property
more fully described on said Deed of Trust referred to herein.

Together with the Note or Notes therein described or referred to, the money due and to become due
therein with interest, and all rights accrued or to accrue under said Deed of Trust.

1                                                    Assn



Trustee's Sale No: 09-FAA-96724

Dated: 6 | 18 | 10

AAMES FUNDING CORPORATION DBA AAMES
HOME LOAN

BY: _____

Name  Jeffrey W. Gideon

Title  Vice President

STATE OF __Texas__ )
COUNTY OF __Tarrant__ ) ) ss.

On 6 | 18 | 10 , before me, Amy McQueen, Notary Public
personally appeared __Jeffrey W. Gideon__ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted executed the instrument.

WITNESS my hand and official seal.

_____

NOTARY PUBLIC, in and for the State of
__Texas__, residing at: __Tarrant__
My commission expires: 8 / 28 / 12



2

Assn

EXHIBIT 2

DBFINMGMT, DOMSUPPCERT, CLOSED

## U.S. Bankruptcy Court
## District of Oregon
## Bankruptcy Petition #: 12-30053-tmb13

|  |  |
|---|---|
| *Assigned to:* Judge Trish M Brown | *Date filed:* 01/05/2012 |
| Chapter 13 | *Date terminated:* 05/31/2012 |
| Voluntary | *Debtor dismissed:* 05/31/2012 |
| Asset | *341 meeting:* 03/06/2012 |

*Debtor disposition:* Dismissed for Failure to File
Information

**Debtor**                                        represented by **Ha To Ha**
**Ha To Ha**                                                        PRO SE
8230 SE Yamhill St
Portland, OR 97216
MULTNOMAH-OR
503-961-5506
SSN / ITIN: xxx-xx-9579
*aka* **Ha To Ha**

*Trustee*
**Wayne Godare**
1300 SW 5th #1700
Portland, OR 97201
(503) 972-6300

*U.S. Trustee*
**US Trustee, Portland**
620 SW Main St #213
Portland, OR 97205
(503) 326-4000

| Filing Date | # | Docket Text |
|---|---|---|
| 01/05/2012 | ⬤ | Commencement of Case. (jd) (Entered: 01/05/2012) |
| 01/05/2012 | ⬤ | Meeting of Creditors Set for 02/14/2012 at 09:30 AM at CHAPTER 12/13 TRUSTEE, Portland,Confirmation Hearing Set for 03/08/2012 at 09:00AM at Courtroom #4, Portland. Proof of Claim Due by 05/14/2012. (jd) (Entered: 01/05/2012) |
| | ⬤ 1 | Receipt of Chapter 13 Filing Fee - $281.00 by JE. |

| 01/05/2012 | | Receipt Number 00306446. (admin) (Entered: 01/06/2012) |
|---|---|---|
| 01/05/2012 | ●2 | Statement of Social Security Number (OF #B21) (jed) (Entered: 01/06/2012) |
| 01/05/2012 | ●3 (5 pgs) | Chapter 13 Voluntary Petition Filed by Ha To Ha (jed) (Entered: 01/06/2012) |
| 01/05/2012 | ●4 (1 pg) | Certificate of Credit Counseling Briefing Filed By Debtor Ha To Ha (jed) (Entered: 01/06/2012) |
| 01/06/2012 | ●5 (1 pg) | Order and Notice Regarding Time to File Documents; and Notice of Proposed Dismissal. (jed) (Entered: 01/06/2012) |
| 01/06/2012 | ●6 (5 pgs; 3 docs) | Notice of Bankruptcy Case, Meeting of Creditors, and Deadlines. Financial Management Certificate due by 3/30/2012 (jed) (Entered: 01/06/2012) |
| 01/08/2012 | ●7 (4 pgs) | BNC Certificate of Notice of 6 Notice of Bankruptcy Case, Meeting of Creditors, and Deadlines. Financial Management Certificate due by 3/30/2012 (jed). (Admin.) (Entered: 01/08/2012) |
| 01/08/2012 | ●8 (3 pgs) | Certificate of Notice Re: 5 Order and Notice Regarding Time to File Documents; and Notice of Proposed Dismissal. (jed). (Admin.) (Entered: 01/08/2012) |
| 01/19/2012 | ●9 (1 pg) | Motion to Extend Time to File Missing Documents Filed by Debtor Ha To Ha. (rdl) (Entered: 01/20/2012) |
| 01/23/2012 | ●10 (1 pg) | Order Granting 9 Motion to Extend Time to File Missing Documents filed by Debtor Ha To Ha (ksw) (Entered: 01/23/2012) |
| 01/25/2012 | ●11 (3 pgs) | Certificate of Notice Re: 10 Order Granting 9 Motion to Extend Time to File Missing Documents filed by Debtor Ha To Ha (ksw). (Admin.) (Entered: 01/25/2012) |
| 02/08/2012 | ●12 (1 pg) | Motion to Extend Time to File Missing Documents Filed by Debtor Ha To Ha (rdl) Corrected filed date. Modified on 2/9/2012 (rdl). (Entered: 02/09/2012) |

| 02/10/2012 | ● 13 (1 pg) | Order Granting 12 Motion to Extend Time to File Missing/Conversion Documents filed by Debtor Ha To Ha (rdl) (Entered: 02/10/2012) |
| 02/12/2012 | ● 14 (3 pgs) | Certificate of Notice Re: 13 Order Granting 12 Motion to Extend Time to File Missing/Conversion Documents filed by Debtor Ha To Ha (rdl). (Admin.) (Entered: 02/12/2012) |
| 02/15/2012 | ● 15 | Continued Meeting of Creditors. Filed by Trustee Wayne Godare. 341(a) Meeting to be Held on 3/6/2012 at 04:00 PM at CHAPTER 12/13 TRUSTEE, Portland. (^Godare3, Wayne) (Entered: 02/15/2012) |
| 02/16/2012 | ● 16 (3 pgs) | Objection to Confirmation of Plan Filed By Creditor ODR Bkcy. (Penrod, Judy) (Entered: 02/16/2012) |
| 02/28/2012 | ● 17 (30 pgs) | Missing Documents: All Schedules and Summary of Schedules and Unsworn Declaration, Statement of Financial Affairs and Unsworn Declaration, Filed By Debtor Ha To Ha (dda) (Entered: 02/29/2012) |
| 02/28/2012 | ● 18 (8 pgs) | Chapter 13 Statement of Current Monthly and Disposable Income Filed By Debtor Ha To Ha (dda) (Entered: 02/29/2012) |
| 02/28/2012 | ● 19 (4 pgs) | INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha (dda) (Entered: 02/29/2012) |
| 03/02/2012 | ● 20 (6 pgs) | Certificate of Notice Re: 19 INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha (dda). (Admin.) (Entered: 03/02/2012) |
| 03/07/2012 | ● 21 (1 pg) | Objection to Confirmation of Plan and Motion to Dismiss. (^Godare2, Wayne) (Entered: 03/07/2012) |
| 03/08/2012 | ● 22 (1 pg) | Hearing Held. Re: 19 INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha (dda). (sfs) (Entered: 03/09/2012) |
| 03/09/2012 | ● 23 (1 pg) | Order Denying Confirmation and Granting Additional Time to File Documents. Amended Plan Due by 4/23/2012. (sfs) (Entered: 03/09/2012) |
| | ● 24 (3 pgs) | Certificate of Notice Re: 23 Order Denying Confirmation and Granting Additional Time to File |

| 03/11/2012 | | Documents. Amended Plan Due by 4/23/2012. (sfs). (Admin.) (Entered: 03/11/2012) |
|---|---|---|
| 04/02/2012 | ● 25<br>(1 pg) | Notice of Requirement to File Financial Management Certificate. (Entered: 04/02/2012) |
| 04/04/2012 | ● 26<br>(3 pgs) | Certificate of Notice Re: 25 Notice of Requirement to File Financial Management Certificate.. (Admin.) (Entered: 04/04/2012) |
| 04/17/2012 | ● 27<br>(2 pgs) | Motion to Extend Time to File Missing/Conversion Documents Filed by Debtor Ha To Ha (cbb) (Entered: 04/18/2012) |
| 04/20/2012 | ● 28<br>(1 pg) | Order Denying Confirmation and Granting Additional Time to File Documents. Amended Plan Due by 5/23/2012. (sfs) (Entered: 04/20/2012) |
| 04/22/2012 | ● 29<br>(3 pgs) | Certificate of Notice Re: 28 Order Denying Confirmation and Granting Additional Time to File Documents. Amended Plan Due by 5/23/2012. (sfs). (Admin.) (Entered: 04/22/2012) |
| 05/07/2012 | ● 30<br>(5 pgs) | Notice and Motion for Relief from Stay Filed by Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2 (McMAHON-MYHRAN, LISA) (Entered: 05/07/2012) |
| 05/07/2012 | 31 | Receipt of Filing Fee for Notice and Motion for Relief from Stay(12-30053-tmb13) [motion,mrlfsty] ( 176.00). Receipt Number 8811882. (U.S. Treasury) (Entered: 05/07/2012) |
| 05/23/2012 | ● 32<br>(7 pgs) | Amended Schedule(s) Filed By Debtor Ha To Ha (cbb) (Entered: 05/24/2012) |
| 05/24/2012 | ● 33<br>(6 pgs; 2 docs) | Order Returning Amended Schedules D, E and F Filed By Ha To Ha (cbb) Additional attachment(s) added on 5/24/2012 (ksw). (Entered: 05/24/2012) |
| 05/26/2012 | ● 35<br>(3 pgs) | Certificate of Notice Re: 33 Order Returning Amended Schedules D, E and F Filed By Ha To Ha (cbb) Additional attachment(s) added on 5/24/2012 (ksw).. (Admin.) (Entered: 05/26/2012) |

| | | |
|---|---|---|
| 05/31/2012 | ● 36<br>(3 pgs) | Order Re: 30 Notice and Motion for Relief from Stay Filed by Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2 (McMAHON-MYHRAN, LISA) (rdl) (Entered: 05/31/2012) |
| 05/31/2012 | ● 37<br>(1 pg) | Order of Dismissal and Administratively Closing Case Re: Failed to file amended plan as previously ordered. (rdl) (Entered: 05/31/2012) |
| 06/02/2012 | ● 38<br>(5 pgs) | Certificate of Notice Re: 36 Order Re: 30 Notice and Motion for Relief from Stay Filed by Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2 (McMAHON-MYHRAN, LISA) (rdl). (Admin.) (Entered: 06/02/2012) |
| 06/02/2012 | ● 39<br>(3 pgs) | Certificate of Notice Re: 37 Order of Dismissal and Administratively Closing Case Re: Failed to file amended plan as previously ordered. (rdl). (Admin.) (Entered: 06/02/2012) |
| 06/07/2012 | ● 40<br>(4 pgs) | Chapter 13 Trustee's Final Account and Report. (^Godare6, Wayne) (Entered: 06/07/2012) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/31/2013 12:25:17 | | |
| **PACER Login:** | rt0476 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 12-30053-tmb13 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Links : included Format: html Page counts for documents: included |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

CLOSED, DBFINMGMT, DOMSUPPCERT, PrvDismONE

## U.S. Bankruptcy Court
## District of Oregon
## Bankruptcy Petition #: 12-38965-rld13

|  |  |
|---|---|
| *Assigned to:* Judge Randall L. Dunn | *Date filed:* 12/06/2012 |
| Chapter 13 | *Date terminated:* 02/28/2013 |
| Voluntary | *Debtor dismissed:* 02/28/2013 |
| Asset | *341 meeting:* 01/22/2013 |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Ha To Ha** |
| **Ha To Ha** | PRO SE |
| 8230 SE Yamhill St | |
| Portland, OR 97216 | |
| MULTNOMAH-OR | |
| 503-961-5506 | |
| SSN / ITIN: xxx-xx-9579 | |
| *aka* **Ha To Ha** | |

**Trustee**
**Wayne Godare**
222 SW Columbia St #1700
Portland, OR 97201
(503) 972-6300

**U.S. Trustee**
**US Trustee, Portland**
620 SW Main St #213
Portland, OR 97205
(503) 326-4000

| Filing Date | # | Docket Text |
|---|---|---|
| 12/06/2012 | ● | Commencement of Case. (sgs) (Entered: 12/06/2012) |
| 12/06/2012 | ●1<br>(5 pgs; 3 docs) | Superseded by Docket No. 7. Notice of Meeting of Creditors Set for 01/08/2013 at 09:30 AM at CHAPTER 12/13 TRUSTEE, Portland,Confirmation Hearing Set for 01/31/2013 at 09:00AM at Courtroom #3, Portland. Proof of Claim Due by 04/08/2013. (sgs) Modified on 12/7/2012 (lew). (Entered: 12/06/2012) |

Live Database Area                                                                    Page 2 of 6

| 12/06/2012 | ● | 1 alias[es] added:Ha To Ha Filed By Debtor Ha To Ha (lew) (Entered: 12/06/2012) |
| 12/06/2012 | ● 2 | Receipt of Chapter 13 Filing Fee - $281.00 by SS. Receipt Number 310236. (admin) (Entered: 12/07/2012) |
| 12/06/2012 | ● 3 | Statement of Social Security Number (OF #B21) (lew) Corrected filed. date. Modified on 12/7/2012 (rdl). (Entered: 12/07/2012) |
| 12/06/2012 | ● 4 (5 pgs) | Chapter 13 Voluntary Petition Filed by Ha To Ha (lew) Corrected filed date. Modified on 12/7/2012 (rdl). (Entered: 12/07/2012) |
| 12/06/2012 | ● 5 (1 pg) | Certificate of Credit Counseling Briefing Filed By Debtor Ha To Ha (lew) (Entered: 12/07/2012) |
| 12/07/2012 | ● 6 (1 pg) | Order and Notice Regarding Time to File Documents; and Notice of Proposed Dismissal. (lew) (Entered: 12/07/2012) |
| 12/07/2012 | ● 7 (5 pgs; 3 docs) | Notice of Bankruptcy Case, Meeting of Creditors, and Deadlines. Fin Management Certificate due by 2/22/2013 (lew) (Entered: 12/07/2012) |
| 12/09/2012 | ● 8 (4 pgs) | BNC Certificate of Notice of 7 Notice of Bankruptcy Case, Meeting of Creditors, and Deadlines. Fin Management Certificate due by 2/22/2013 (lew). (Admin.) (Entered: 12/09/2012) |
| 12/09/2012 | ● 9 (3 pgs) | Certificate of Notice Re: 6 Order and Notice Regarding Time to File Documents; and Notice of Proposed Dismissal. (lew). (Admin.) (Entered: 12/09/2012) |
| 12/24/2012 | ● 10 (1 pg) | Motion to Extend Time to File Missing Documents Filed by Debtor Ha To Ha (bdw) (Entered: 12/24/2012) |
| 12/27/2012 | ● 11 (1 pg) | Order Granting Re: 10 Motion to Extend Time to File Missing/Conversion Documents filed by Debtor Ha To Ha. Documents due 1/4/2013; no further extension will be granted. (sgs) (Entered: 12/27/2012) |
| | ● 12 | Certificate of Notice Re: 11 Order Granting Re: 10 |

| | | |
|---|---|---|
| 12/29/2012 | (3 pgs) | Motion to Extend Time to File Missing/Conversion Documents filed by Debtor Ha To Ha. Documents due 1/4/2013; no further extension will be granted. (sgs). (Admin.) (Entered: 12/29/2012) |
| 01/07/2013 | ● 13 (1 pg) | Motion to Extend Time to File Missing/Conversion Documents Filed by Debtor Ha To Ha (jbk) (Entered: 01/08/2013) |
| 01/08/2013 | ● 14 (30 pgs) | Missing Documents Schedules A - J and Summary of Schedules and Statement of Financial Affairs and Statement of Unsworn Declaration: Filed By Debtor Ha To Ha (jbk) (Entered: 01/08/2013) |
| 01/08/2013 | ● 15 (4 pgs) | INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha (jbk) (Entered: 01/08/2013) |
| 01/08/2013 | ● 16 (8 pgs) | Chapter 13 Statement of Current Monthly and Disposable Income Filed By Debtor Ha To Ha (jbk) (Entered: 01/08/2013) |
| 01/08/2013 | ● 17 | Continued Meeting of Creditors. Filed by Trustee Wayne Godare. 341(a) Meeting to be Held on 1/22/2013 at 02:00 PM at CHAPTER 12/13 TRUSTEE, Portland. (^Godare3, Wayne) (Entered: 01/08/2013) |
| 01/09/2013 | ● 18 (1 pg) | Notice of Hearing Re: 13 Motion to Extend Time to File Missing/Conversion Documents Filed by Debtor Ha To Ha (jbk). Hearing Scheduled for 01/16/2013 at 10:30 AM at Courtroom #3, Portland. (gjd) (Entered: 01/09/2013) |
| 01/10/2013 | ● 19 (6 pgs) | Certificate of Notice Re: 15 INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha (jbk). (Admin.) (Entered: 01/10/2013) |
| 01/11/2013 | ● 20 (3 pgs) | Certificate of Notice Re: 18 Notice of Hearing Re: 13 Motion to Extend Time to File Missing/Conversion Documents Filed by Debtor Ha To Ha (jbk). Hearing Scheduled for 01/16/2013 at 10:30 AM at Courtroom #3, Portland. (gjd). (Admin.) (Entered: 01/11/2013) |
| | ● 21 (1 pg) | Notice of Hearing Re: 13 Motion to Extend Time to File Missing/Conversion Documents Filed by Debtor Ha To Ha (jbk). Hearing Scheduled for |

| 01/16/2013 | | 01/30/2013 at 09:30 AM at Meet Me Style Telephone. (gjd) (Entered: 01/16/2013) |
|---|---|---|
| 01/16/2013 | 22 (1 pg) | Hearing Held. Re: 13 Motion to Extend Time to File Missing/Conversion Documents Filed by Debtor Ha To Ha (jbk). (sfs) (Entered: 01/17/2013) |
| 01/18/2013 | 23 (3 pgs) | Certificate of Notice Re: 21 Notice of Hearing Re: 13 Motion to Extend Time to File Missing/Conversion Documents Filed by Debtor Ha To Ha (jbk). Hearing Scheduled for 01/30/2013 at 09:30 AM at Meet Me Style Telephone. (gjd). (Admin.) (Entered: 01/18/2013) |
| 01/23/2013 | 24 (1 pg) | Objection to Confirmation of Plan and Motion to Dismiss. (^Godare3, Wayne) (Entered: 01/23/2013) |
| 01/23/2013 | 25 (4 pgs) | Objection to Confirmation of Plan Filed by Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust (Re:15 INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha). (McMAHON-MYHRAN, LISA) (Entered: 01/23/2013) |
| 01/30/2013 | 26 (1 pg) | Hearing Held. Re: 13 Motion to Extend Time to File Missing/Conversion Documents Filed by Debtor Ha To Ha (jbk). (sfs) (Entered: 01/30/2013) |
| 01/31/2013 | 27 (1 pg) | Record of Proceeding Re: Confirmation. Adjourned Confirmation / Evidentiary Hearing to be Held on 02/28/2013 at 02:30 PM at Courtroom #3, Portland. (sfs) (Entered: 01/31/2013) |
| 01/31/2013 | 28 (1 pg) | Order Re: Application of FRCP 26 (sfs) (Entered: 01/31/2013) |
| 02/02/2013 | 29 (3 pgs) | Certificate of Notice Re: 28 Order Re: Application of FRCP 26 (sfs). (Admin.) (Entered: 02/02/2013) |
| 02/25/2013 | 30 (1 pg) | Notice of Requirement to File Financial Management Certificate. (Entered: 02/25/2013) |
| | 31 (29 pgs) | Declaration of Melissa Black Re: 25 Objection to Confirmation of Plan Filed By Creditor DEUTSCHE BANK NATIONAL TRUST |

| | | |
|---|---|---|
| 02/26/2013 | | COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust (McMAHON-MYHRAN, LISA) (Entered: 02/26/2013) |
| 02/27/2013 | 32 (3 pgs) | Certificate of Notice Re: 30 Notice of Requirement to File Financial Management Certificate.. (Admin.) (Entered: 02/27/2013) |
| 02/28/2013 | 33 (1 pg) | Hearing Held. (sfs) (Entered: 02/28/2013) |
| 02/28/2013 | 35 (1 pg) | Order of Dismissal and Administratively Closing Case Re: Debtor's Oral Motion at the 2/28/2013 hearing is granted. (sgs) (Entered: 02/28/2013) |
| 03/02/2013 | 36 (3 pgs) | Certificate of Notice Re: 35 Order of Dismissal and Administratively Closing Case Re: Debtor's Oral Motion at the 2/28/2013 hearing is granted. (sgs). (Admin.) (Entered: 03/02/2013) |
| 05/10/2013 | 37 (4 pgs) | Chapter 13 Trustee's Final Account and Report. (^Godare6, Wayne) (Entered: 05/10/2013) |
| 07/09/2013 | 38 (12 pgs; 2 docs) | Transcript of Hearing Held on January 31, 2013, and Notice of Filing Thereof, re: 15 INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha (jbk). Court Transcript Review due on 10/7/2013. (pjk) Modified on 10/8/2013 (pjk). Removed viewer restrictions; no requests to redact. (Entered: 07/09/2013) |
| 07/09/2013 | 39 (13 pgs; 2 docs) | Transcript of Hearing Held on February 28, 2013, and Notice of Filing Thereof, re: 15 INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha. Court Transcript Review due on 10/7/2013. (pjk) Modified on 10/8/2013 (pjk). Removed viewer restrictions; no requests to redact. (Entered: 07/09/2013) |
| 07/11/2013 | 40 (3 pgs) | Certificate of Notice Re: 38 Transcript of Hearing Held on January 31, 2013, and Notice of Filing Thereof, re: 15 INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha (jbk). Court Transcript Review due on 10/7/2013. (pjk). (Admin.) (Entered: 07/11/2013) |
| | 41 | Certificate of Notice Re: 39 Transcript of Hearing |

Live Database Area                                                                    Page 6 of 6

| | (3 pgs) | Held on February 28, 2013, and Notice of Filing Thereof, re: 15 INITIAL Chapter 13 PLAN Filed by Debtor Ha To Ha. Court Transcript Review due on 10/7/2013. (pjk). (Admin.) (Entered: 07/11/2013) |
|---|---|---|
| 07/11/2013 | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/31/2013 12:27:13 | | | |
| **PACER Login:** | rt0476 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 12-38965-rld13 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Links : included Format: html Page counts for documents: included |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

Live Database Area

**DBFINMGMT, JDBFINMGMT, ABUSENO**

## U.S. Bankruptcy Court
### District of Oregon
### Bankruptcy Petition #: 13-32107-elp7

|  |  |
|---|---|
| *Date filed:* | 04/08/2013 |
| *341 meeting:* | 05/16/2013 |
| *Deadline for filing claims:* | 08/19/2013 |
| *Deadline for objecting to discharge:* | 07/15/2013 |
| *Deadline for financial mgmt. course:* | 07/17/2013 |

*Assigned to:* Judge Elizabeth L Perris
Chapter 7
Voluntary
Asset

**Debtor**
**Jessica P Sam**
8230 SE Yamhill St
Portland, OR 97216
MULTNOMAH-OR
503-961-5506
SSN / ITIN: xxx-xx-3566

represented by **Jessica P Sam**
PRO SE

**Joint Debtor**
**Ha To Ha**
8230 SE Yamhill St
Portland, OR 97216
MULTNOMAH-OR
503-961-5506
SSN / ITIN: xxx-xx-9579

represented by **Ha To Ha**
PRO SE

**Trustee**
**Kenneth S Eiler**
515 NW Saltzman Rd - PMB 810
Portland, OR 97229
(503) 292-6020

**U.S. Trustee**
**US Trustee, Portland**
620 SW Main St #213
Portland, OR 97205
(503) 326-4000

| Filing Date | # | Docket Text |
|---|---|---|
| 04/08/2013 | ⬤ | Commencement of Case. (ksw) (Entered: 04/08/2013) |
| | ⬤ 1<br>(5 pgs; 3 docs) | Notice of Meeting of Creditors Set for 05/16/2013 at 09:30 AM at UST1, US Trustee's Office, Portland, Rm 223, Objection to Discharge Due 07/15/2013, Fin |

| 04/08/2013 | | Mgmt Certificate Due 07/01/2013.(ksw) (Entered: 04/08/2013) |
| --- | --- | --- |
| 04/08/2013 | ●2 | Receipt of Chapter 7 Filing Fee - $306.00 by KW. Receipt Number 311562. (admin) (Entered: 04/09/2013) |
| 04/08/2013 | ●3 | Statement of Social Security Number (OF #B21) (ksw) (Entered: 04/09/2013) |
| 04/08/2013 | ●4 (8 pgs) | Chapter 7 Voluntary Petition Filed by Ha To Ha, Jessica P Sam (ksw) (Entered: 04/09/2013) |
| 04/08/2013 | ●5 (2 pgs) | Certificate of Credit Counseling Briefing Filed By Joint Debtor Ha To Ha, Debtor Jessica P Sam (ksw) (Entered: 04/09/2013) |
| 04/09/2013 | ●6 (1 pg) | Order and Notice Regarding Time to File Documents; and Notice of Proposed Dismissal. (ksw) (Entered: 04/09/2013) |
| 04/10/2013 | ●7 (4 pgs) | BNC Certificate of Notice of 1 Notice of Meeting of Creditors Set for 05/16/2013 at 09:30 AM at UST1, US Trustee's Office, Portland, Rm 223, Objection to Discharge Due 07/15/2013, Fin Mgmt Certificate Due 07/01/2013.(ksw). (Admin.) (Entered: 04/10/2013) |
| 04/11/2013 | ●8 (3 pgs) | Certificate of Notice Re: 6 Order and Notice Regarding Time to File Documents; and Notice of Proposed Dismissal. (ksw). (Admin.) (Entered: 04/11/2013) |
| 04/23/2013 | ●9 (31 pgs) | Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company (McMAHON-MYHRAN, LISA) (Entered: 04/23/2013) |
| 04/23/2013 | 10 | Receipt of Filing Fee for Notice and Motion for Relief from Stay(13-32107-elp7) [motion,mrlfsty] ( 176.00). Receipt Number 10388173. (re:Doc#9) (U.S. Treasury) (Entered: 04/23/2013) |
| 04/23/2013 | ●11 (8 pgs) | Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form B22A filed By Joint Debtor Ha To Ha, Debtor Jessica P Sam (bdw) (Entered: 04/24/2013) |

| 04/23/2013 | ●12 (11 pgs) | Missing Documents Statement of Financial Affairs and Unsworn Declaration: Filed By Joint Debtor Ha To Ha, Debtor Jessica P Sam (bdw) (Entered: 04/24/2013) |
| 04/29/2013 | ●13 | Receipt of Amendment Filing Fee - $30.00 by LW. Receipt Number 311821. (admin) (Entered: 04/30/2013) |
| 04/29/2013 | ●14 (25 pgs) | Missing Documents: All Schedules and Summary of Schedules and Unsworn Declaration: Statement of Intent Filed By Joint Debtor Ha To Ha, Debtor Jessica P Sam (bdw) (Entered: 05/01/2013) |
| 04/29/2013 | ●15 (2 pgs) | Notice of Amended Schedules and Creditor Mailing List ONLY Filed By Joint Debtor Ha To Ha, Debtor Jessica P Sam (bdw) (Entered: 05/01/2013) |
| 05/06/2013 | ●16 (14 pgs) | Response and Notice of Hearing Re: Relief from Stay. Filed by Joint Debtor Ha To Ha, Debtor Jessica P Sam Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company Hearing Scheduled for 05/14/2013 at 01:30 PM at Meet Me Style Telephone. (bdw) (Entered: 05/07/2013) |
| 05/14/2013 | ●17 (1 pg) | Hearing Held. Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company. (sfs) (Entered: 05/14/2013) |
| 05/18/2013 | ●18 (1 pg) | Trustee's Objection to Claimed Exemptions Filed by Trustee Kenneth S Eiler. (Eiler, Kenneth) (Entered: 05/18/2013) |
| 05/18/2013 | ●19 (1 pg) | Inventory and Report of Assets and Order and Notice of Time to File Claims. Trustee reports that diligent inquiry has been made into the whereabouts of property belonging to the estate, and has taken possession of or claims an interest in property over and above exemptions which have been claimed by the debtor(s). (Re:1 Notice of Meeting of Creditors Set for 05/16/2013 at 09:30 AM at UST1, US Trustee's Office, Portland, Rm 223, Objection to Discharge Due 07/15/2013, Fin Mgmt Certificate Due 07/01/2013.(ksw). Filed by Trustee Kenneth S Eiler. Proofs of Claims due by 08/19/2013. (Eiler, Kenneth) (Entered: 05/18/2013) |

| | | |
|---|---|---|
| 05/21/2013 | ●20<br>(3 pgs) | Order Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company (dtl) (Entered: 05/21/2013) |
| 05/22/2013 | ●21<br>(3 pgs) | Order and Notice of Time to File Proofs of Claim and Certificate of Service (Admin.) (Entered: 05/22/2013) |
| 05/23/2013 | ●22<br>(5 pgs) | Certificate of Notice Re: 20 Order Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company (dtl). (Admin.) (Entered: 05/23/2013) |
| 05/24/2013 | ●23<br>(1 pg) | Order re: 18 Trustee's Objection to Claimed Exemptions Filed by Trustee Kenneth S Eiler. (sgs) (Entered: 05/24/2013) |
| 05/26/2013 | ●24<br>(3 pgs) | Certificate of Notice Re: 23 Order re: 18 Trustee's Objection to Claimed Exemptions Filed by Trustee Kenneth S Eiler. (sgs). (Admin.) (Entered: 05/26/2013) |
| 06/04/2013 | ●26<br>(148 pgs) | Motion to Reconsider. Filed by Joint Debtor Ha To Ha, Debtor Jessica P Sam Re: 20 Order Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company (bdw) (Entered: 06/05/2013) |
| 06/13/2013 | ●27<br>(3 pgs) | Response and Request for Hearing Filed by Joint Debtor Ha To Ha, Debtor Jessica P Sam Re: 18 Trustee's Objection to Claimed Exemptions Filed by Trustee Kenneth S Eiler. (bdw) (Entered: 06/13/2013) |
| 06/13/2013 | ●28<br>(8 pgs) | First AMENDED Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form B22A. Filed By Joint Debtor Ha To Ha, Debtor Jessica P Sam (bdw) (Entered: 06/13/2013) |
| 06/14/2013 | ●29<br>(1 pg) | Notice of Hearing Re: 18 Trustee's Objection to Claimed Exemptions Filed by Trustee Kenneth S Eiler., 26 Motion to Reconsider. Filed by Joint Debtor Ha To Ha, Debtor Jessica P Sam Re: 20 Order Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company (bdw). Hearing Scheduled for 07/10/2013 at 11:00 AM at Telephone Hearing. (kam) (Entered: 06/14/2013) |
| | | |

| | | |
|---|---|---|
| 06/16/2013 | 30 (3 pgs) | Certificate of Notice Re: 29 Notice of Hearing Re: 18 Trustee's Objection to Claimed Exemptions Filed by Trustee Kenneth S Eiler., 26 Motion to Reconsider. Filed by Joint Debtor Ha To Ha, Debtor Jessica P Sam Re: 20 Order Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company (bdw). Hearing Scheduled for 07/10/2013 at 11:00 AM at Telephone Hearing. (kam). (Admin.) (Entered: 06/16/2013) |
| 06/18/2013 | 31 (5 pgs) | Response Filed by Creditor Deutsche Bank National Trust Company Re: 26 Motion to Reconsider. Filed by Joint Debtor Ha To Ha, Debtor Jessica P Sam Re: 20 Order Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company (bdw) (McMAHON-MYHRAN, LISA) (Entered: 06/18/2013) |
| 06/20/2013 | 32 (8 pgs) | Amended Schedule(s) Filed By Joint Debtor Ha To Ha, Debtor Jessica P Sam (bdw) (Entered: 06/20/2013) |
| 06/20/2013 | 33 (6 pgs) | Notice of Amended Schedules and Amended Schedules-Creditor Mailing List Filed By Joint Debtor Ha To Ha, Debtor Jessica P Sam (bdw) (Entered: 06/20/2013) |
| 06/20/2013 | 34 | Receipt of Amendment Filing Fee - $30.00 by CB. Receipt Number 312451. (admin) (Entered: 06/21/2013) |
| 06/20/2013 | 35 (92 pgs) | First AMENDED Motion to Reconsider Filed by Joint Debtor Ha To Ha, Debtor Jessica P Sam Re:20 Order Re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company (dtl) (bdw) (Entered: 06/21/2013) |
| 06/27/2013 | 36 (2 pgs) | Response Filed by Trustee Kenneth S Eiler Re: 27 Response and Request for Hearing Filed by Joint Debtor Ha To Ha, Debtor Jessica P Sam Re: 18 Trustee's Objection to Claimed Exemptions Filed by Trustee Kenneth S Eiler. (bdw) (Eiler, Kenneth) (Entered: 06/27/2013) |
| 07/02/2013 | 37 (1 pg) | Notice of Intent to Close Case without Entry of Discharge. (Entered: 07/02/2013) |
| | | Financial Management Certificate due by 07/17/2013 |

| 07/02/2013 | | (Entered: 07/02/2013) |
|---|---|---|
| 07/04/2013 | ⬤ 38<br>(3 pgs) | Certificate of Notice Re: 37 Notice of Intent to Close Case without Entry of Discharge.. (Admin.) (Entered: 07/04/2013) |
| 07/09/2013 | ⬤ 39<br>(1 pg) | Transcript of Hearing Held on May 14, 2013, and Notice of Filing Thereof, re: 9 Notice and Motion for Relief from Stay Filed by Creditor Deutsche Bank National Trust Company. Court Transcript Review due on 10/7/2013. (pjk) (Entered: 07/09/2013) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/10/2013 09:42:36 | | |
| PACER Login: | rt0476 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 13-32107-elp7 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Links : included Format: html Page counts for documents: included |
| Billable Pages: | 3 | Cost: | 0.30 |

EXHIBIT 3

DISTRICT OF OREGON

**F I L E D**

**July 18, 2013**

**Clerk, U.S. Bankruptcy Court**

Below is an Order of the Court.

*Elizabeth L Perris*
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON
AT PORTLAND

In re:

JESSICA P SAM AND
HA TO HA,
        Debtors

Case No: 13-32107-elp7

ORDER DENYING MOTION FOR
RECONSIDERATION

THIS MATTER, coming on regularly before the undersigned Bankruptcy Judge upon

Motion of Debtors Jessica P Sam and Ha To Ha for an Order Reconsidering the Order Granting

Relief from the Automatic Stay entered by the Court on May 21, 2103,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for

Reconsideration is Denied.

### 

EXHIBIT ___A___
PAGE _1_ OF _2_

ORDER DENYING MOTION FOR RECONSIDERATION - 1
60300-0230-BK-2\

*Law Offices*
R O B I N S O N   T A I T, P.S.
710 Second Avenue, Suite 710
Seattle, Washington 98104

Presented by:


  /s/ Lisa McMahon-Myhran
Lisa McMahon-Myhran, 00084
Robinson Tait
Attorneys for DEUTSCHE BANK
NATIONAL TRUST COMPANY in
its capacity as indenture trustee for the
Noteholders of AAMES MORTGAGE
INVESTMENT TRUST 2005-2, a
Delaware statutory trust.

cc.

 Jessica P Sam
 Ha To Ha
 8230 SE Yamhill St
 Portland, OR  97216


EXHIBIT _A_
PAGE _2_ OF _2_

CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing NOTICE OF APPEAL upon the

following:

> Attorneys for Deutsche Bank National Trust
> Robinson Tait, P.S.
> 710 Second Avenue, Suite 710
> Seattle, WA 98104
>
> Trustee
> Kenneth S. Eiler
> 515 NW Saltzman RD – PMB 810
> Portland, OR 97229
>
> U.S. Trustee
> US Trustee, Portland
> 620 SW Main St. #213
> Portland, OR 97205

By mailing a copy of said NOTICE OF APPEAL in a sealed, first-class postage-paid

envelope, addressed to the attorney(s) of record listed above, and deposited with the United

States Postal Service, on the date set forth below.

Dated this 1ST day of August, 2013

Jessica P. Sam
Ha To Ha
8230 SE Yamhill Street
Portland, OR 97216
Phone: (503) 961-5506
Email: Jessica.Sam@seterus.com

EXHIBIT 4

Case 12-30053-tmb13    Doc 36    Filed 05/31/12

**DISTRICT OF OREGON**

**F I L E D**

**May 31, 2012**

**Clerk, U.S. Bankruptcy Court**

Below is an Order of the Court.

TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | |
|---|---|
| In re | ) Case No. **12-30053-tmb13** |
| **HA TO HA** | ) |
| | ) ORDER, DRAFTED ON: **05/25/12** , |
| | ) RE: RELIEF FROM (Check ALL that apply): |
| | ) ☒ DEBTOR STAY ☐ CODEBTOR STAY |
| | ) CREDITOR: **DEUTSCHE BANK NATIONAL TRUST COMPANY*** |
| Debtor(s) | ) CODEBTOR:_____ |

The undersigned, _____**Lisa McMahon-Myhran**_____ , whose address is _____**710 Second Avenue, Suite 710**_____ **Seattle, WA 98104**_____ , Email address is _____**lmcmahon@robinsontait.com**_____ , Phone No. is _____**206-654-5529**_____ , and any OSB # is ___**00084**___ , presents this Order based upon:

☐ The completed Stipulation of the parties located at the end of this document.

☐ The oral stipulation of the parties at the hearing held on _____ .

☐ The ruling of the court at the hearing held on _____ .

☐ Creditor certifies any default notice required by pt. 5 of the Order re: Relief from Stay entered on _____ was served, and that debtor has failed to comply with the conditions of that order.

☒ Creditor certifies that no response was filed within the response period plus 3 days to the Motion for Relief from Stay that was filed on __**05/07/12**__ and served on __**05/07/12**__ .

**IT IS ORDERED** that, except as provided in pt. 4 below, the stay existing pursuant to 11 USC §362(a) shall remain in effect as to the property described below (hereinafter "the property"):

☐ Personal property described as (e.g., 2001 Ford Taurus):

***in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2 and its successors and assigns**

☒ Real property located at (i.e., street address):

**8230 Yamhill Street**
**Portland, OR 97216**

☐ [Optional UNLESS In Rem Relief Granted]  Exhibit A attached hereto is the legal description of the property.

720.90 (12/1/10)    **Page 1 of 3**

**IT IS FURTHER ORDERED** that the stay is subject to the conditions marked below:

☐ 1. **Regular Payment Requirements**.

    ☐ a. Debtor(s) shall deliver regular monthly payments in the amount of $_____ commencing _____ to Creditor at the following address:

    ☐ b. The Chapter 13 trustee shall immediately pay and disburse to Creditor the amount of $_____ per month from funds paid to the trustee by Debtor(s), and continue each month until the plan is confirmed, at which time the plan payment terms shall control. Payments made by the trustee under this order shall be deemed to be payments under the plan for purposes of the trustee's collection of percentage fees.

    ☐ c. Debtor(s) shall pay to the trustee any and all payments required to be paid under the terms of the Chapter 13 plan.

☐ 2. **Cure Payment Requirements**.  Debtor(s) shall cure the post-petition default of $_____ consisting of

    (e.g., $_____ in payments and $_____ in late charges for April - June, 2002), as follows:

    ☐ a. In equal monthly installments of $_____ each, commencing _____ and continuing thereafter through and including _____.

    ☐ b. By paying the sum of $_____ on or before _____, and the sum of $_____ on or before _____.

    ☐ c. Other (describe):

☐ 3. **Insurance Requirement(s)**.  Debtor shall maintain insurance on the property at all times as required by the security agreement, naming _____ as the loss payee.

    On or before _____ Debtor(s) shall provide counsel for Creditor with proof of insurance.

☒ 4. **Stay Relief and Codebtor Stay Relief without Cure Opportunity**.

    ☐ a. Upon default in the conditions in pt(s). _____ Creditor may file and serve a certificate of non-compliance specifying the default, together with a proposed order terminating the stay to allow Creditor to foreclose on, and obtain possession of, the property to the extent permitted by applicable nonbankruptcy law, which the Court may grant without further notice or hearing.

    ☐ b. The stay is terminated to allow Creditor to foreclose on, and obtain possession of, the property to the extent permitted by applicable nonbankruptcy law, provided that a foreclosure sale shall not occur prior to _____.

    ☐ c. Creditor is granted relief from stay effective _____ to foreclose on, and obtain possession of, the property, to the extent permitted by applicable nonbankruptcy law.

    ☒ d. Creditor is granted relief from stay to foreclose on, and obtain possession of, the property, to the extent permitted by applicable nonbankruptcy law.

    ☐ e. If a Creditor with a senior lien on the property is granted relief from stay, Creditor may file and serve a certificate identifying the senior lien holder and a proposed order terminating the stay, which the Court may grant without further notice or hearing.

    ☐ f. Creditor is granted relief from stay to _____ _____.

    ☐ g. Creditor is granted "in rem" relief from stay with respect to the real property described above and in Exhibit A.  This order shall be binding in any other case filed under 11 USC purporting to affect such real property filed not later than two (2) years after the date of entry of this order unless the bankruptcy court in the subsequent case grants relief from this order.  Any governmental unit that accepts notices of interests or liens in real property shall accept a certified copy of this order for indexing and recording.

720.90 (12/1/10)   **Page 2 of 3**

☐ h.  Creditor is granted relief from the codebtor stay, as it applies to the codebtor(s) named in the caption above, to enforce the terms of the contract and collect the deficiency balance.

☐ 5.  **Stay Relief with Cure Opportunity.**  Upon default in the checked condition(s) in pt(s). 1 - 3, Creditor shall serve written notice of default on ☐Debtor(s) and ☐Attorney for Debtor(s) that gives Debtor(s) _____ calendar days after the mailing of the notice to cure the default.  If Debtor(s) fails to cure the default in accordance with this paragraph, then Creditor shall be entitled to submit a proposed order terminating the stay, which the Court may grant without further notice or hearing.

  ☐ a.  The notice of default may require that Debtor(s) make any payment(s) that becomes due between the date the notice of default is mailed and before the cure deadline.

  ☐ b.  The notice of default may require Debtor(s) to pay $_____ for the fees and costs of sending the notice.

  ☐ c.  Only _____ notices of default and opportunity to cure are required per ☐year (calculated from date of entry of this order), ☐during the remainder of this case, or ☐(describe):

☐ 6.  **Amended Proof of Claim.**  Creditor shall file an amended proof of claim to recover all accrued post-petition attorney fees and costs and (describe):

☒ 7.  **Miscellaneous Provisions.**

  ☐ a.  If Creditor is granted relief from stay, the 14-day stay provided by Fed. Rule Bankr. Proc. 4001(a) shall be waived.

  ☒ b.  Any notice that Creditor's counsel shall give to Debtor(s)/Codebtor, or attorney for Debtor(s)/Codebtor, pursuant to this order shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 USC §1692.

☐ 8.  A final hearing on Creditor's motion for relief from stay shall be held on _____ at _____ in _____.

☐ 9.  Other:

PRESENTED, AND CERTIFIED, BY:                ###

**/s/ Lisa McMahon-Myhran**

IT IS SO STIPULATED:

Creditor's Attorney:                                        Debtor(s)'s Attorney:

Name: _____        Name: _____
OSB#: _____        OSB#: _____

NO OBJECTION TO ORDER BY CASE TRUSTEE:        Codebtor's Attorney:

By:_____

                                                        Name: _____
                                                        OSB#: _____

720.90 (12/1/10)    **Page 3 of 3**

EXHIBIT 5

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 12-38965-rld13 |
| HA TO HA, | ) | |
| | ) | PORTLAND, OR |
| Debtor. | ) | February 28, 2013 |
| | ) | 2:32 p.m. |
| | ) | |
| | ) | Adjourned Confirmation/ |
| | ) | Evidentiary |
| | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE RANDALL L. DUNN
United States Bankruptcy Judge

APPEARANCES OF COUNSEL:

| | |
|---|---|
| For Debtor<br>(Pro Se) | Mr. Ha To Ha and<br>Ms. Jessica Sam<br>8230 Southeast Yamhill Street<br>Portland, Oregon  97216 |
| Trustee | Mr. Wayne Godare<br>CHAPTER 13 TRUSTEE<br>1300 Southwest Fifth Avenue<br>Suite 1700<br>Portland, Oregon  97201 |
| For Creditor<br>Deutsche Bank<br>National Trust<br>Company | Mr. Nicolas A. Daluiso<br>ROBINSON TAIT, PS<br>710 Second Avenue<br>Suite 710<br>Seattle, Washington  98104 |
| Also Present: | Ms. Alicia Wood, Residential<br>Credit Solutions |

```
 1              P R O C E E D I N G S

 2

 3         MS. SPEAKER:  Rise.  The court is now

 4  in session.  The Honorable Randall L. Dunn

 5  presiding.

 6         Please be seated.

 7         JUDGE DUNN:  Good afternoon.

 8         MR. SPEAKER:  Good afternoon.

 9         MR. SPEAKER:  Afternoon.

10         JUDGE DUNN:  All right.  This is the

11  evidentiary hearing scheduled in the Ha case.  But

12  I want to go over as a preliminary matter some

13  things which may end up being dispositive.  Now, at

14  the initial confirmation hearing, I suggested to

15  Ms. Ha that she obtain counsel.

16         Have you done so?

17         MS. HA:  No, we have not.

18         JUDGE DUNN:  All right.  And you have

19  filed schedules in your Chapter 13 case.  And you

20  also have filed a Chapter 13 plan which indicates

21  that your disposable income is $35 a month, and

22  that's consistent with your Schedules I and J filed

23  under penalty of perjury; correct?

24         MS. HA:  Correct.

25         JUDGE DUNN:  So you have only $35 a
```

1 | month to fund a plan in Chapter 13.

2 |       MS. HA:  Correct.

3 |       JUDGE DUNN:  All right.

4 |       Now, in response to concerns that have

5 | been expressed about Deutsche Bank's claim, they

6 | have submitted a declaration of Melissa Black and

7 | I'm informed -- which states certain things.  And

8 | I'm informed by my courtroom deputy that they have

9 | the original promissory note which you've signed to

10 | present in evidence today.  Is that correct?

11 |       MR. DALUISO:  That's correct, Your

12 | Honor, as well as the original loan modification

13 | agreement.

14 |       JUDGE DUNN:  And, Ms. Ha, did you have

15 | an opportunity to review Ms. Black's declaration?

16 |       MS. HA:  We just received this on our

17 | way here.  Literally it came today five minutes

18 | prior to we took off and then come here.

19 |       JUDGE DUNN:  All right.  You'll recall

20 | I told you at the last hearing that at this hearing

21 | I suspec- -- I expect you to present a feasible

22 | plan.

23 |       Now, here's your fundamental problem.

24 | If the declaration of Ms. Black is correct in

25 | behalf of the bank and it's supported by copies of

1   the note -- and I understand the original note is

2   available here for review in evidence -- a deed of

3   trust on the property, a recorded assignment of the

4   note, and a critical statement that you are

5   allegedly delinquent on the promissory note in the

6   amount of $52,678.14.

7          Now, assuming you were able to

8   establish that all of this is illusory, that they

9   don't have any rights to your home whatsoever, the

10  schedules in the case indicate that -- and you

11  claim you own a home valued at $200,000 that is

12  unencumbered and assuming that your husband has

13  some interest there where he could claim a home

14  exem- -- a homestead exemption to, the maximum

15  homestead exemption that can be claimed under

16  Oregon law is $50,000.

17          So assuming that you've got a home

18  valued at $200,000 and that's the value you've

19  stated under penalty of perjury, homestead --

20  maximum homestead claim of $50,000, there's

21  $150,000 of equity there.

22          Now, the maximum life of a Chapter 13

23  plan is 60 months.  60 months times $35 equals

24  $2,110 -- $2,100, excuse me.  Now, if they -- if

25  Deutsche Bank has no lien on your residence, your

1  best interest number that must be paid in a Chapter

2  13 plan to your unsecured creditors is at least

3  $150,000.

4           If their claim is a legitimate claim in

5  the bankruptcy -- and I'm not fully determining

6  that today.  The documents they're submitting are

7  basically submitted for standing purposes to object

8  to the plan.  And on their face they're adequate to

9  do that.

10          But assuming that they had a deficiency

11 judgment of 52- -- deficiency arrears prepetition

12 of $52,678.14 and under plan -- if -- if they had,

13 in fact, a valid security interest in the home, you

14 would have to make maintenance payments in the

15 amount of the normal payments under the promissory

16 note, plus over the life of the plan -- life of the

17 plan pay all the post petition arrears.

18          So just with those numbers -- if their

19 numbers are right which may or may not be the case,

20 but if your numbers -- but if your numbers are

21 right, there is no way you can propose a feasible

22 plan in Chapter 13.  No way.  It doesn't work

23 mathematically under any view of the factual

24 circumstances.

25          So unless you can tell me how you could

1  propose something that works, you have two

2  alternatives.  I can convert your case to Chapter 7

3  and you can get a discharge of your unsecured debts

4  and you'll deal with -- with Deutsche Bank in state

5  court, or I can simply dismiss the case.  But since

6  you can't propose a confirmable plan, you can't

7  stay in 13.

8            MS. HA:  Okay.

9            JUDGE DUNN:  So what do you want me to

10  do?

11            MS. HA:  Can we proceed with this

12  hearing to see what these folks have to say first?

13            JUDGE DUNN:  No.  Because I don't need

14  to do that.  There is no scenario, whether I accept

15  their view of the facts or your view of the facts,

16  that you can propose a confirmable plan in Chapter

17  13.  So in effect, if I went ahead with further

18  fact findings with regard to this matter, I would

19  be conducting a proceeding that would lead to an

20  advisory opinion.  That is inappropriate.

21            MS. HA:  Okay.  So with that say, if

22  you dismiss the case, then there's no hearing

23  today; correct?

24            JUDGE DUNN:  Well, there -- there will

25  be a hearing today where I looked at the facts as

1  presented in your own schedules and the alternative

2  facts alleged by Deutsche Bank.   Whether I

3  agreed -- ultimately found one or the another

4  accurate, there is no way that you could proceed in

5  Chapter 13.

6           MS. HA:  Okay.  Okay.

7           Do you want to convert to 7?  Okay.

8           MR. DALUISO:  Your Honor, if I may?

9           JUDGE DUNN:  Okay.

10          MR. DALUISO:  I'm a little confused

11  and --

12          JUDGE DUNN:  There's -- there's no --

13  I'm not surprised.  But this is only the first

14  hearing where you've appeared --

15          MR. DALUISO:  Right.

16          JUDGE DUNN:  -- in behalf of the bank,

17  and this the third hearing, in effect, I've had

18  with Ms. Ha.  And at the two prior hearings I've

19  attempted to point out some of these problems.  And

20  then I set this hearing to give her a chance to get

21  counsel and propose a feasible plan, and she's done

22  neither.  So, you know, I gave her time for that

23  and plenty of warning but advised her that, if I

24  didn't get a feasible plan at this hearing, then

25  this case was not likely to remain in Chapter 13.

1              Now, I understand this is the second

2    case Ms. Ha has filed.  I'm well aware of the --

3    the records of this court.  And the first case was

4    dismissed because she didn't file an amended plan

5    by the deadline set by Judge Brown.  So that's the

6    relevant history.

7              So, now, what else would you like to

8    tell me or ask me?

9              MR. DALUISO:  I don't disagree with you

10   in any manner in any regard.  My confusion is:  Who

11   actually is the debtor?

12             JUDGE DUNN:  Well, Ms. Ha is the

13   debtor.  There's no question.  She filed this case.

14   She is the only person who filed this case.

15             MR. DALUISO:  What I'm confused about

16   is the debtor --

17             MR. GODARE:  No, no.  Your Honor, it's

18   Mr. Ha.  It's Ms. Ha speaks primarily on his behalf

19   because she has --

20             MR. HA:  Well, she's my wife.

21             MR. GODARE:  I understand.

22             But in the --

23             JUDGE DUNN:  All right.

24             MR. GODARE:  -- petition it's Mr. Ha.

25   And in the previous case --

1              JUDGE DUNN:  Well, that's -- I thought
2    I had clarified that but it's -- I'm wrong.  The
3    last time I thought it was Ms. Ha who was here, but
4    it's -- it's actually Mr. Ha who is the debtor?
5              MS. HA:  Mr. Ha is on the notices on
6    the mortgage, deed of trust.  I'm his wife.
7              JUDGE DUNN:  All right.
8              MS. HA:  I'm here to protect my
9    interests.
10             JUDGE DUNN:  Well, okay.  But -- so
11   you've got a double argument against Deutsche Bank
12   that, number one, you don't think they have a valid
13   lien against the property; but, number, two, your
14   argument would be that, even if they have a valid
15   lien against the property, you're the debtor and
16   that you don't owe them any money.  Well, that's
17   fine.
18             But based on your schedules, you've
19   told me that you have a $200,000 property with no
20   lien on it.  And based on you -- your view of the
21   world under penalty of perjury that's part of the
22   evidence before this court, you cannot propose a
23   feasible plan under Chapter 13, you; and Mr. Ha
24   can't propose a feasible plan under Chapter 13
25   because he is the one who puts the same materials

10

1    in the schedules and doesn't work.

2              There is no view of the world in which

3    with $35 of disposable income that Mr. Ha could

4    propose a feasible Chapter 13 plan whether Deutsche

5    Bank has a lien on the property or not.

6              MS. HA:  All right.  So -- okay.  So

7    just for the purpose of this hearing, we'll --

8    we'll -- we'll consider converting over to a

9    Chapter 13 -- Chapter 7, then.

10             JUDGE DUNN:  So you would prefer to do

11   that?

12             Now, here's what will happen in a

13   Chapter 7 if I don't dismiss the case.  And if it

14   turned out that your view of the world was correct

15   and that Deutsche Bank had no appropriate lien on

16   the property, the trustee is going to take the

17   house and sell it and give -- you'll get the

18   homestead exemption, $50,000, but he's going to

19   take the balance and give it to your creditors.

20   That is what will happen in Chapter 7, but you will

21   get a discharge of your debts.

22             So do you -- so I ask you again.  Do

23   you want me to convert the case to Chapter 7, or do

24   you want me to dismiss it?

25             MS. HA:  Okay.  Go ahead and dismiss

11

1   it, then.

2           JUDGE DUNN:  All right.  Then I will

3   dismiss the Chapter 13 case on the debtor's

4   motion.

5           And time lines are important here.  If

6   you file another Chapter 13 case, it may be in

7   light of the timing that there's no automatic stay.

8   But that's what I will do based on your motion and

9   the facts before me.

10          I will dismiss the case on the debtor's

11  motion, and that will conclude today's hearing.

12          MR. DALUISO:  Thank you, Your Honor.

13          JUDGE DUNN:  You're welcome.

14

15          (The proceedings concluded at

16           2:45 p.m.)

17

18

19

20

21

22

23

24

25

Case 12-38965-rld13    Doc 39    Filed 07/09/13

12

```
 1                C E R T I F I C A T E

 2

 3            I, Shellene L. Iverson, a Certified

 4   Shorthand Reporter in and for the state of Oregon,

 5   hereby certify that I transcribed all testimony

 6   adduced and other oral proceedings had in the

 7   foregoing matter from the FTR recording made at the

 8   time of proceedings.  The foregoing transcript,

 9   pages 2 through 11, constitutes a full, true, and

10   accurate record of such testimony adduced and other

11   oral proceedings had and the whole thereof to the

12   best of my knowledge, ability, and belief.

13            Witness my hand and seal at

14   Milwaukie, Oregon, this 20th day of May 2013.

15

16            Shellene Iverson

17

18            Shellene L. Iverson
             Certified Shorthand Reporter
19            Certificate No. 03-0386

20

21

22

23

24

25
```

EXHIBIT 6

1  Lisa McMahon-Myhran, OSB#00084
   Robinson Tait, P.S.
2  710 Second Avenue, Suite 710
3  Seattle, WA 98104
   Phone: (206) 676-9640
4  lmcmahon@robinsontait.com

5

6                  UNITED STATES BANKRUPTCY COURT
7                   FOR THE DISTRICT OF OREGON
                          AT PORTLAND
8

9  In Re:                                   Case No.:  12-38965-rld13

10 HA TO HA                                  DECLARATION    IN    SUPPORT    OF
                                             OBJECTION TO CONFIRMATION OF PLAN
11

12

13

14  _____Melissa Black_____, being first duly sworn on oath, deposes and states as follows:

15

16  1.  I am over the age of eighteen and am authorized to make this declaration on behalf of DEUTSCHE
        BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of
17      AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust ("Movant").

18  2.  I am presently a Assistant Vice President-Servicing for Residential Credit Solutions, ("Residential") servicer and
        attorney in fact of the loan for Movant. If sworn as a witness I can competently testify to the matters
19      stated herein.  The statements set forth in this Declaration are true and correct to the best of my
20      knowledge and belief.

21  3.  In the regular performance of my job functions, I am familiar with the business records as
22      maintained by Residential for the purpose of servicing mortgage loans.  These records (which
        typically include data compilations, electronically imaged documents, and others) are made at or
23      near the time by, or from information provided by, persons with knowledge of the activity and
        transactions reflected in such records, and are kept in the course of business activity conducted
24      regularly by Residential. It is the regular practice of Residential's mortgage servicing business to
        make and update these records.  In connection with making this affidavit, I have personally
25      examined these business records reflecting data and information of HA TO HA.

26

27  4.  Movant is the holder of and in possession of a note ("Note") for this Loan, bearing the date of

28  Declaration- 1 -
    60410-0168-BK-2\

                                                             Law Offices
                                                    ROBINSON TAIT, P.S.
                                                     710 Second Avenue, Suite 710
                                                       Seattle, Washington 98104

1     April 18, 2005, in which the Debtor(s) **HA TO HA** promised to pay the sum of $202,400.00. A
2     true and correct copy of said Note is attached hereto as Exhibit "A."

3   5.   **The original Note is currently held at** Robinson Tait, P.S.

4   6.   The Note is secured by a deed of trust on real estate together with all improvements thereon,
5      located at 8230 SE Yamhill ST, Portland, OR 97216. The Deed of Trust was recorded in
     Multnomah County as recording #2005-074270. The Deed of Trust was assigned to Movant, as
6      evidenced by the assignment recorded in Multnomah County under recording No. 2010-077497.
7      See Exhibits "B" and "C" attached.

8   7.   The debtor is currently contractually delinquent on the Note for the February 1, 2011 payment.
     The total pre-petition arrearage is $52,678.14.
9

10   I declare under penalty of perjury that the foregoing is true and correct and that this declaration was
11   executed at Fort Worth, TX     on February 22 , 2013

12

13

14                 *Melissa Black*
                DECLARANT    Melissa Black
15

16

17        DATED this 22 day of February, 2013.

18

19

20     /s/ Lisa McMahon-Myhran

21     Lisa McMahon-Myhran, 00084
    ROBINSON TAIT, P.S.
22

23

24

25

26

27

28   Declaration- 2 -
    60410-0168-BK-2\

# ADJUSTABLE RATE NOTE

**(LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

April 18, 2005                                    IRVINE ,          California
[Date]                              [City]                  [State]

8230 SE Yamhill Street, Portland, OR  97216
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 202,400.00                (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Aames Funding Corporation DBA Aames Home Loan                                                    .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of          8.990   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the  1st         day of each month beginning on  June 1st          , 2005      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on May 1, 2035                          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  Aames Funding Corporation DBA Aames Home Loan, 350 South Grand Avenue, 47th Floor, Los Angeles, CA  90071                                          , or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,627.10                . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the  1st    day of   May          , 2007   , and on that day every 6th       month thereafter. Each date on which my interest rate could change is called a "Change Date."

**OREGON ADJUSTABLE RATE NOTE - LIBOR 6 MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) -** Single Family

AP6380R (0101)      DOC #: 502891   APP7
VMP MORTGAGE FORMS (800)521-7291
Page 1 of 4                    Initials:

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index. "

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Six and 350 Thousandths percentage point(s) (                          6.350 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than                          11.990 % or less than                          8.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than          One          1.000 %) from the rate of interest I have been paying for the preceding          Six percentage point(s) (                                                                                    14.990 % or less than months. My interest rate will never be greater than              8.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

Except as provided below, I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

However, if within the first          2          years after the execution of the Deed of Trust, I make any prepayments(s) of principal, whether voluntarily, involuntarily, or upon acceleration of the Note within any 12-month period the total amount of which exceeds twenty percent (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advanced interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

## 6. LOAN CHARGES

This Note shall be governed by the laws of the State of Oregon. If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
                                -Borrower                                                  -Borrower
Ha To Ha

_____ (Seal)                    _____ (Seal)
                                -Borrower                                                  -Borrower

*[Sign Original Only]*

Case 12-38965-rld13    Doc 31    Filed 02/26/13

## Endorsement and Assignment of Note

Date __04/22/05__

Re: Loan No. ___140___

Borrower's Name: __Ha To Ha__

Property Address: __8230 SE Yamhill Street__

__Portland, OR  97216__

Note Date: _APRIL 18, 05_

Loan Amount: __$202,400.00__

Los Angeles, California

For value received, I hereby transfer, endorse and assign to _____ the within Note and
Deed of Trust securing the same, so far as the same pertains to said Note, without recourse.

Aames Funding Corporation, DBA Aames Home Loan

X _____
  ,Assistant Secretary

X _____
  ,Assistant Secretary

**Thuytien Phung**

AC702803.DOC (08/98)

95
185
11

Until a change is requested all tax statements shall be
sent to the following address.

Aames Funding Corporation DBA
Aames Home Loan
350 South Grand Avenue
Los Angeles, CA 90071
WHEN RECORDED MAIL TO

TransUnion Settlement Solutions, Inc.
Attn: Recording Department
5300 Brandywine Parkway
Suite 100
Wilmington, DE 19803

Recorded in MULTNOMAH COUNTY, OREGON
C. Swick, Deputy Clerk          ATTDS
C18    19
Total :        111.00

2005-074270      04/27/2005 02:37:12pm

TAX ACCOUNT NUMBER
R281439

————————— [Space Above This Line For Recording Data] —————————

## DEED OF TRUST

FIDELITY NATIONAL TITLE CO.  03-3112713

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated  April 18, 2005
together with all Riders to this document.
(B) "Borrower" is   HA TO HA

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  Aames Funding Corporation DBA Aames Home Loan

Lender is a   Corporation
organized and existing under the laws of  The State of California

DOC  #:317841                 APPL #:
OREGON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3038 1/01

VMP®-6(OR) (0104)
Page 1 of 15    UM50 0104.02      Initials ____
VMP MORTGAGE FORMS - (800)521-7291

19

Lender's address is  350 South Grand Avenue, 42nd Floor, Los Angeles, CA
90071
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  Lindsay Harte Law Office

(E) "Note" means the promissory note signed by Borrower and dated   April 18, 2005
The Note states that Borrower owes Lender   Two Hundred Two Thousand Four Hundred
and No/100                                                                          Dollars
(U.S. $  202,400.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  May 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

DOC  #:317842              APPL #:                    Initials: ____          Form 3038   1/01

VMP -6(OR) (0104)                      Page 2 of 15

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 2 of 19
Order: 100361229 Comment:

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of MULTNOMAH :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

As per Exhibit A attached hereto and made a part hereof

which currently has the address of

[Street]

8230 SE Yamhill Street
Portland                                 [City], Oregon 97216        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

DOC #:317843          APPL #                    Initials: ____

VMP-6(OR) (0104)          Page 3 of 15          Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 3 of 19
Order: 100361229 Comment:

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower

DOC   #:317844                    APPL #

-6(OR) (0104)                     Page 4 of 15          Initials: _____          Form 3038  1/01

shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

DOC #:317645                    APPL #:                                          Initials: ____

VMP®-6(OR) (0104)                          Page 5 of 15                                Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 5 of 19
Order: 100361229 Comment:

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to

DOC #:317846                    APPL #

Initials: _____

-6(OR) (0104)                Page 6 of 15                        Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 6 of 19
Order: 100361229 Comment:

Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC  #:317847                          APPL #:

MMP -6(OR) (0104)                      Page 7 of 15                    Initials: _____        Form 3038  1/01

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 7 of 19
Order: 100361229 Comment:

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

DOC  #:317846                    APPL #:

-8(OR) (0104)                    Page 8 of 15                    Initials: _____                    Form 3038  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

DOC  #:317849                      APPL #:

-6(OR) (0104)                      Page 9 of 15                    Form 3038  1/01

Initials: ___

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 10 of 19
Order: 100361229 Comment:

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

DOC #:317851                   APPL #.                                    Initials: _____

VMP®-6(OR) (0104)                          Page 11 of 15                    Form 3038  1/01

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC #:317852                    APPL #:

VMP-6(OR) (0104)                              Page 12 of 15                    Initials: _____                    Form 3038  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. **Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. **Required Evidence of Property Insurance.**

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

DOC #:317853                    APPL #                    Initials: _____                    Form 3038  1/01

VMP®-6(OR) (0104)                    Page 13 of 15

Description: Multnomah,OR Document-Year.DocID 2005.74270 Page: 13 of 19
Order: 100361229 Comment:

Case 12-38965-rld13   Doc 31   Filed 02/26/13

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                                                        -Borrower
                                          Ha  To  Ha

_____        _____ (Seal)
                                                                        -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                        -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                        -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                        -Borrower

DOC  #:317854                 APPL #

VMP®-6(OR) (0104)                    Page 14 of 15                  Form 3038  1/01

STATE OF OREGON, *Multnomah* County ss:

On this 21st day of april 2005 , personally appeared the above named

Ha  To  Ha

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: 1/5/08

(Official Seal)

Before me: *L. Harkless*

*L. Harkless*

Notary Public for Oregon

> OFFICIAL SEAL
> L. HARKLESS
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 375355
> MY COMMISSION EXPIRES JANUARY 5, 2008

DOC #:317855              APPL #              Initials: _____              Form 3038  1/01

-6(OR) (0104)              Page 15 of 15

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this    18th    day of    April    , 2005    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to    Aames Funding Corporation DBA Aames Home Loan

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

8230 SE Yamhill Street, Portland, OR  97216
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    The Note provides for an initial interest rate of    8.990 %. The Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay may change on the    1st    day of    May    , 2007    , and on that day every    6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."
    **(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) -Single Family

-AS838U (9705)    DOC #:505171    PPL #
Page 1 of 3    Initials: ____
ELECTRONIC LASER FORMS, INC. · (800)327-0545

business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 350 Thousandths                                                                  percentage point(s)
(          6.350 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than
11.990 % or less than                                        8.990 %. Thereafter, my interest rate will
never be increased or decreased on any single Change Date by more than    One
percentage point(s)
(          1.000 %) from the rate of interest I have been paying for the preceding    6      months.
My interest rate will never be greater than                14.990 % or less than              8.990 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER Uniform
Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender

-AS838U (9705)                              Page 2 of 3
DOC #:505172  APPL #:(                                                                    Initials:

information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Ha To Ha                        -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

-AS838U (9705)                        Page 3 of 3
DOC #:505173   APPL #:

53

When recorded, mail to:

**RESIDENTIAL CREDIT SOLUTIONS**
Attn: Foreclosure Department
4282 N FREEWAY
FORT WORTH, TEXAS 76137

Multnomah County Official Records
C Swick, Deputy Clerk

**2010-077497**

**$41.00**

00685160201000774970020025

06/23/2010 01:27:43 PM

1R-MTG ASGT              Cnt=1 Stn=43 ATRGW
$10.00 $11.00 $15.00 $5.00

Trustee's Sale No: 09-FAA-96724

*FAA967240112000000*

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, AAMES FUNDING CORPORATION DBA AAMES HOME LOAN, by these presents, grants, bargains, sells, assigns, transfers and sets over unto DEUTSCHE BANK NATIONAL TRUST COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust., 4282 N Freeway, Fort Worth, TX 76137, all beneficial interest under that certain Deed of Trust dated 4/18/2005, and executed by HA TO HA, as Grantor, to LINDSAY HARTE LAW OFFICE, as Trustee, and recorded on 4/27/2005, under Auditor's File No. 2005-074270, of MULTNOMAH County, State of OREGON, and covering property more fully described on said Deed of Trust referred to herein.

Together with the Note or Notes therein described or referred to, the money due and to become due therein with interest, and all rights accrued or to accrue under said Deed of Trust.

i

Assn

Trustee's Sale No: 09-FAA-96724

Dated: 6/18/10

AAMES FUNDING CORPORATION DBA AAMES
HOME LOAN

BY: _____
Name   Jeffrey W. Gideon
Vice President   Title

STATE OF  Texas
              Tarrant          ) ss.
COUNTY OF _____ )

On 6/18/10 _____, before me, Amy McQueen, Notary Public
personally appeared  Jeffrey W. Gideon _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC in and for the State of
Texas, residing at: Tarrant
My commission expires: 8/28/12

2                                    Assn

Case 12-38965-rld13    Doc 31    Filed 02/26/13

The Honorable Randall L. Dunn

1

2

3  Lisa McMahon-Myhran
   Robinson Tait, P.S.
4  710 Second Avenue, Suite 710
   Seattle WA  98104
5  (206) 676-9640

6

7           UNITED STATES BANKRUPTCY COURT
                FOR THE DISTRICT OF OREGON
8                     AT PORTLAND

9  In Re:                          BANKRUPTCY NO. 12-38965-rld13

10                                 CHAPTER NO.  13
   HA TO HA
11
                                   PROOF OF SERVICE
12            Debtor.

13

14      Andrew Roche, under penalty of perjury under the laws of the United States,

15  declares as follows:

16      1.    That I am a citizen of the United States, over the age of 21 years, and

17  competent to be a witness herein.

18      2.    That on February 26, 2013, I transmitted electronically and/or by depositing

19  in the United States mail, postage prepaid (as indicated herein), copies of the:

20  Declaration in Support of Objection to Confirmation of Plan

21  addressed as follows:

22
    Ha To Ha
23  8230 SE Yamhill St
    Portland, OR 97216
24

25

26  and to:

27      WAYNE GODARE              c0urtmai1@portland13.com

28

PROOF OF SERVICE - 1                          Law Offices
60300-0213-BK-2\OR Proof of Service    ROBINSON TAIT, P.S.
                                         710 Second Avenue, Suite 710
                                            Seattle WA  98104
                                             (206) 676-9640

1    U.S. Trustee                          USTPRegion18.PL.ECF@usdoj.gov

2

3    Dated February 26, 2013.

4

5                                    /s/  Andrew Roche

6                                    Andrew Roche

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE - 2
60300-0213-BK-2\OR Proof of Service

*Law Offices*
ROBINSON TAIT, P.S.
710 Second Avenue, Suite 710
Seattle WA 98104
(206) 676-9640

EXHIBIT 7

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

In re:                          )
                                )
JESSICA P. SAM and              ) Case No.
HA TO HA,                       ) 13-32107-elp7
                                )
          Debtors.              ) PORTLAND, OR
                                ) May 14, 2013
                                ) 1:44 p.m.
                                )
                                ) Motion for Relief from
                                ) Stay Deutsche Bank
                                ) National Trust Company
                                )

# ORIGINAL

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE RANDALL L. DUNN
United States Bankruptcy Judge

APPEARANCES OF COUNSEL:

| | |
|---|---|
| For Debtor<br>(Pro Se) | Mr. Ha To Ha and<br>Ms. Jessica Sam<br>8230 Southeast Yamhill Street<br>Portland, Oregon  97216 |
| Trustee | Mr. Kenneth S. Eiler<br>ATTORNEY AT LAW<br>515 Northwest Saltzman Road<br>Portland, Oregon  97229 |
| For Creditor<br>Deutsche Bank<br>National Trust<br>Company | Ms. Lisa M. McMahon-Myhran<br>ROBINSON TAIT, PS<br>710 Second Avenue<br>Suite 710<br>Seattle, Washington  98104 |

Capri ~ Iverson
Certified Freelance Reporters
1219 SW 18th Avenue · Portland, OR 97205
503.274.4644 · 800.992.4829

3

1        Now, I'm going to get back to that

2   because the evidence presented at that hearing and

3   the situation of the prior case are relevant to the

4   current case.  I would simply note at this point

5   that that hearing was held on February 28th of this

6   year, and the case was dismissed virtually

7   immediately thereafter.

8        So now we come to the current Chapter 7

9   case that is Judge Perris' case, but since I'm the

10  duty judge on relief from stay, I'm hearing it at

11  this point.

12       The case was filed.  No motion was

13  filed to extend the stay.  So because Mr. Ha had a

14  case pending that was dismissed on his oral motion

15  within a year, the stay terminated as to Mr. Ha.

16  He has no stay.

17       Ms. Sam is here for the first time, and

18  her defense response to the motion is to argue that

19  the moving party, Ms. McMahon-Myhran's client, has

20  no standing.

21       Now, when the motion was filed in this

22  case, the moving party attached copies of the

23  relevant loan documents to the motion.  These

24  included a copy of the original Aames' promissory

25  note showing an endorsement en banc and the deed of

1  trust which reflected as the lender the -- Aames

2  again but attached was a recorded -- copy of a

3  recorded assignment of the deed of trust to

4  Deutsche Bank.

5        Now, in spite of the debtors' arguments

6  that there's no evidence as to standing, I, of

7  course, having remembered this case, took a look at

8  the docket in the prior case and actually listened

9  to the recording of the February 28th hearing.  In

10 support of Deutsche Bank's objection to

11 confirmation in that case, Ms. McMahon-Myhran filed

12 the declaration of Melissa Black to authenticate

13 the subject loan documents which are the same loan

14 documents attached to the motion in this case.

15       I advised the parties at the hearing on

16 the objection to confirmation in the prior Chapter

17 13 case that the evidence submitted by the bank was

18 adequate to establish Deutsche Bank's standing as a

19 party entitled to object to confirmation.  And that

20 documentation also is adequate to establish

21 standing to file a motion for relief from stay.

22       I further note that, at the time of the

23 February 28th hearing, counsel for Deutsche Bank

24 appeared in court and advised through the courtroom

25 deputy that they had the original promissory note

1  with them that they were ready to submit in

2  evidence.

3           So the arguments that they have no

4  standing, particularly since, in order to obtain

5  relief from stay a creditor only has to establish a

6  colorable claim which is that they have some claim

7  to the property that ultimately, if it's litigated

8  under state law, may or may not be successful but

9  apparently gives them a position of interest with

10  respect to the property subject as the right to

11  (inaudible) the subject (inaudible) --

12           MS. SAM:  Your Honor, I'm having

13  trouble -- I'm having difficulty hearing you.

14           And then I object.

15           JUDGE DUNN:  Well, if you -- if you

16  need a recording of the hearing, you may obtain one

17  by requesting one from my courtroom deputy.

18           But based on the foregoing information,

19  I find that Deutsche Bank has standing to file --

20           MS. SAM:  Your Honor, I object.

21           JUDGE DUNN:  -- and prosecute a --

22  well, I under- --

23           MS. SAM:  Your Honor --

24           JUDGE DUNN:  I understand that you

25  object.

1      I am making my findings that they have
2  standing to file and prosecute a motion for relief
3  from stay.  Neither Ms. Sam nor Mr. Ha have
4  controverted the amount alleged in default.  And
5  this is a Chapter 7 case which is not a
6  reorganization case under the Bankruptcy Code.
7      So in light of the foregoing findings,
8  I am going to grant Deutsche Bank's motion for
9  relief from stay at this preliminary hearing for
10  cause pursuant to Section 362(d)(1) of the
11  Bankruptcy Code.
12      And, Ms. McMahon-Myhran, you may submit
13  an order to that effect which I will sign.
14      MS. McMAHON-MYHRAN:  Thank you, Your
15  Honor.
16      JUDGE DUNN:  You're welcome.
17      MS. SAM:  I object to it because the --
18  the -- the promissory note that they said that they
19  have and the recording did not happen after five
20  years of the original recording.
21      JUDGE DUNN:  You know, Ms. Sam, your
22  remedy at this point is to appeal my ruling.
23      MS. SAM:  Okay.
24      JUDGE DUNN:  I have ruled.  I am
25  granting relief from stay for cause based on the

7

1  record before me in this case and the record that

2  was presented in the prior Chapter 13 case in

3  number 12-38965-rld13.

4        MS. McMAHON-MYHRAN:  Your Honor, are

5  you also making a ruling in rem request in our

6  motion or simply on (d)(1)?

7        JUDGE DUNN:  (d)(1).  I'm not making a

8  ruling on in rem.  If -- if you want an in rem

9  ruling, you'll have to request an evidentiary

10 hearing before Judge Perris.

11       MS. McMAHON-MYHRAN:  Thank you.

12       JUDGE DUNN:  You're welcome.

13       I never do in rem without an

14 evidentiary hearing.

15       Any other questions?

16       MS. McMAHON-MYHRAN:  No.  Thank you,

17 Your Honor.

18       JUDGE DUNN:  Thank you very much.

19       MS. McMAHON-MYHRAN:  Bye.

20

21       (The proceedings concluded at

22       1:52 p.m.)

23

24

25

8

```
1                C E R T I F I C A T E
2                                          ORIGINAL
3            I, Shellene L. Iverson, a Certified
4  Shorthand Reporter in and for the state of Oregon,
5  hereby certify that I transcribed all testimony
6  adduced and other oral proceedings had in the
7  foregoing matter from the FTR recording made at the
8  time of proceedings.  The foregoing transcript,
9  pages 2 through 7, constitutes a full, true, and
10 accurate record of such testimony adduced and other
11 oral proceedings had and the whole thereof to the
12 best of my knowledge, ability, and belief.
13            Witness my hand and seal at
14 Milwaukie, Oregon, this 20th day of May 2013.
15
16
17                                          _____
18                          Shellene L. Iverson
19                          Certified Shorthand Reporter
                            Certificate No. 03-0386
20
21
22
23
24
25
```



EXHIBIT 8

Case 13-32107-elp7    Doc 20    Filed 05/21/13

DISTRICT OF OREGON

**F I L E D**

May 21, 2013

Clerk, U.S. Bankruptcy Court

Below is an Order of the Court.

*Elizabeth L Perris*
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | |
|---|---|
| In re **JESSICA P SAM and HA TO HA** | ) Case No. **13-32107-elp7** ) ) ) ORDER, DRAFTED ON: **05/14/13** , ) RE: RELIEF FROM (Check ALL that apply): ) ☒ DEBTOR STAY ☐ CODEBTOR STAY ) CREDITOR: **DEUTSCHE BANK NATIONAL TRUST *** |
| Debtor(s) | ) CODEBTOR: |

The undersigned, **Lisa McMahon-Myhran** , whose address is **710 Second Avenue, Suite 710 Seattle, WA 98104** , Email address is **lmcmahon@robinsontait.com** , Phone No. is **206-654-5529** , and any OSB # is **00084** , presents this Order based upon:

☐ The completed Stipulation of the parties located at the end of this document.

☐ The oral stipulation of the parties at the hearing held on _____ .

☒ The ruling of the court at the hearing held on **05/14/13** .

☐ Creditor certifies any default notice required by pt. 5 of the Order re: Relief from Stay entered on _____ was served, and that debtor has failed to comply with the conditions of that order.

☐ Creditor certifies that no response was filed within the response period plus 3 days to the Motion for Relief from Stay that was filed on _____ and served on _____ .

**IT IS ORDERED** that, except as provided in pt. 4 below, the stay existing pursuant to 11 USC §362(a) shall remain in effect as to the property described below (hereinafter "the property"):

☐ Personal property described as (e.g., 2001 Ford Taurus):
***COMPANY in its capacity as indenture trustee for the Noteholders of AAMES MORTGAGE INVESTMENT TRUST 2005-2, a Delaware statutory trust. 2006-1 and its successors and assigns**

☒ Real property located at (i.e., street address):
**8230 SE Yamhill Street, Portland, OR 97216**

☐ [Optional UNLESS In Rem Relief Granted]  Exhibit A attached hereto is the legal description of the property.

720.90 (12/1/10)    **Page 1 of 3**

Case 13-32107-elp7   Doc 20   Filed 05/__/13

**IT IS FURTHER ORDERED** that the stay is subject to the conditions marked below:

☐ 1. **Regular Payment Requirements**.

    ☐ a. Debtor(s) shall deliver regular monthly payments in the amount of $_____ commencing _____ to Creditor at the following address:

    ☐ b. The Chapter 13 trustee shall immediately pay and disburse to Creditor the amount of $_____ per month from funds paid to the trustee by Debtor(s), and continue each month until the plan is confirmed, at which time the plan payment terms shall control.  Payments made by the trustee under this order shall be deemed to be payments under the plan for purposes of the trustee's collection of percentage fees.

    ☐ c. Debtor(s) shall pay to the trustee any and all payments required to be paid under the terms of the Chapter 13 plan.

☐ 2. **Cure Payment Requirements**.  Debtor(s) shall cure the post-petition default of $_____ consisting of

    (e.g., $_____ in payments and $_____ in late charges for April - June, 2002), as follows:

    ☐ a. In equal monthly installments of $_____ each, commencing _____ and continuing thereafter through and including _____.

    ☐ b. By paying the sum of $_____ on or before _____, and the sum of $_____ on or before _____.

    ☐ c. Other (describe):

☐ 3. **Insurance Requirement(s)**.  Debtor shall maintain insurance on the property at all times as required by the security agreement, naming _____ as the loss payee.

    On or before _____ Debtor(s) shall provide counsel for Creditor with proof of insurance.

☒ 4. **Stay Relief and Codebtor Stay Relief without Cure Opportunity**.

    ☐ a. Upon default in the conditions in pt(s). _____ Creditor may file and serve a certificate of non-compliance specifying the default, together with a proposed order terminating the stay to allow Creditor to foreclose on, and obtain possession of, the property to the extent permitted by applicable nonbankruptcy law, which the Court may grant without further notice or hearing.

    ☐ b. The stay is terminated to allow Creditor to foreclose on, and obtain possession of, the property to the extent permitted by applicable nonbankruptcy law, provided that a foreclosure sale shall not occur prior to _____.

    ☐ c. Creditor is granted relief from stay effective _____ to foreclose on, and obtain possession of, the property, to the extent permitted by applicable nonbankruptcy law.

    ☒ d. Creditor is granted relief from stay to foreclose on, and obtain possession of, the property, to the extent permitted by applicable nonbankruptcy law.

    ☐ e. If a Creditor with a senior lien on the property is granted relief from stay, Creditor may file and serve a certificate identifying the senior lien holder and a proposed order terminating the stay, which the Court may grant without further notice or hearing.

    ☐ f. Creditor is granted relief from stay to _____

    ☐ g. Creditor is granted "in rem" relief from stay with respect to the real property described above and in Exhibit A.  This order shall be binding in any other case filed under 11 USC purporting to affect such real property filed not later than two (2) years after the date of the entry of this order unless the bankruptcy court in the subsequent case grants relief from this order.  Any governmental unit that accepts notices of interests or liens in real property shall accept a certified copy of this order for indexing and recording.

Case 13-32107-elp7    Doc 20    Filed 05/__/13

☐ h.  Creditor is granted relief from the codebtor stay, as it applies to the codebtor(s) named in the caption above, to enforce the terms of the contract and collect the deficiency balance.

☐ 5.  **Stay Relief with Cure Opportunity**.  Upon default in the checked condition(s) in pt(s). 1 - 3, Creditor shall serve written notice of default on ☐ Debtor(s) and ☐ Attorney for Debtor(s) that gives Debtor(s) _____ calendar days after the mailing of the notice to cure the default.  If Debtor(s) fails to cure the default in accordance with this paragraph, then Creditor shall be entitled to submit a proposed order terminating the stay, which the Court may grant without further notice or hearing.

  ☐ a.  The notice of default may require that Debtor(s) make any payment(s) that becomes due between the date the notice of default is mailed and before the cure deadline.

  ☐ b.  The notice of default may require Debtor(s) to pay $_____ for the fees and costs of sending the notice.

  ☐ c.  Only _____ notices of default and opportunity to cure are required per ☐ year (calculated from date of entry of this order), ☐ during the remainder of this case, or ☐ (describe):

☐ 6.  **Amended Proof of Claim**.  Creditor shall file an amended proof of claim to recover all accrued post-petition attorney fees and costs and (describe):

☒ 7.  **Miscellaneous Provisions**.

  ☐ a.  If Creditor is granted relief from stay, the 14-day stay provided by Fed. Rule Bankr. Proc. 4001(a) shall be waived.

  ☒ b.  Any notice that Creditor's counsel shall give to Debtor(s)/Codebtor, or attorney for Debtor(s)/Codebtor, pursuant to this order shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 USC §1692.

☐ 8.  A final hearing on Creditor's motion for relief from stay shall be held on _____ at _____ in _____.

☐ 9.  Other:

**PRESENTED, AND CERTIFIED, BY:**                    ###

/s/ Lisa McMahon-Myhran
_____

IT IS SO STIPULATED:

Creditor's Attorney:                                Debtor(s)'s Attorney:

_____                     _____
Name: _____                     Name: _____
OSB#: _____                     OSB#: _____

NO OBJECTION TO ORDER BY CASE TRUSTEE:             Codebtor's Attorney:

By:_____                     _____
                                                   Name: _____
                                                   OSB#: _____

EXHIBIT 9

Case 3:13-cv-01521-MO     Document 72-1     Filed 11/06/13     Page 115 of 117     Page ID#:
292
Case 3:13-cv-01521-M⟨⟩     Document 1-2     Filed 08/28/13     P⟨⟩ 3 of 5     Page ID#: 16

DISTRICT OF OREGON

**F I L E D**

**July 18, 2013**

Clerk, U.S. Bankruptcy Court

Below is an Order of the Court.

*Elizabeth L Perris*
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON
AT PORTLAND

In re:

JESSICA P SAM AND
HA TO HA,
            Debtors

Case No: 13-32107-elp7

ORDER DENYING MOTION FOR
RECONSIDERATION

THIS MATTER, coming on regularly before the undersigned Bankruptcy Judge upon

Motion of Debtors Jessica P Sam and Ha To Ha for an Order Reconsidering the Order Granting

Relief from the Automatic Stay entered by the Court on May 21, 2103,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for

Reconsideration is Denied.

### 

EXHIBIT ___A___
PAGE _1_ OF _2_

ORDER DENYING MOTION FOR RECONSIDERATION - 1
60300-0230-BK-2\

*Law Offices*
R O B I N S O N   T A I T , P.S.
710 Second Avenue, Suite 710
Seattle, Washington 98104

Presented by:


 /s/ Lisa McMahon-Myhran

Lisa McMahon-Myhran, 00084
Robinson Tait
Attorneys for DEUTSCHE BANK
NATIONAL TRUST COMPANY in
its capacity as indenture trustee for the
Noteholders of AAMES MORTGAGE
INVESTMENT TRUST 2005-2, a
Delaware statutory trust.

cc.

    Jessica P Sam
    Ha To Ha
    8230 SE Yamhill St
    Portland, OR  97216

EXHIBIT _____A_____
PAGE _2_ OF _2_

CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing NOTICE OF APPEAL upon the

following:

> Attorneys for Deutsche Bank National Trust
> Robinson Tait, P.S.
> 710 Second Avenue, Suite 710
> Seattle, WA 98104
>
> Trustee
> Kenneth S. Eiler
> 515 NW Saltzman RD – PMB 810
> Portland, OR 97229
>
> U.S. Trustee
> US Trustee, Portland
> 620 SW Main St. #213
> Portland, OR 97205

By mailing a copy of said NOTICE OF APPEAL in a sealed, first-class postage-paid

envelope, addressed to the attorney(s) of record listed above, and deposited with the United

States Postal Service, on the date set forth below.

Dated this __1ST__ day of August, 2013

Jessica P. Sam
Ha To Ha
8230 SE Yamhill Street
Portland, OR 97216
Phone: (503) 961-5506
Email: Jessica.Sam@seterus.com

NOTICE OF APPEAL                           Page 3 of 3